569 S.W.2d 549 (1978)
TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellant,
v.
Elbert N. HERRON, Appellee.
No. 1315.
Court of Civil Appeals of Texas, Corpus Christi.
June 26, 1978.
Rehearing Denied August 29, 1978.
*551 James W. Wray, Jr., H. T. Hermansen, Jr., Dyer, Redford, Burnett, Wray & Woolsey, Corpus Christi, for appellant.
Anthony F. Constant, Corpus Christi, for appellee.

OPINION
NYE, Chief Justice.
This is a workmen's compensation case. The injured employee, Elbert N. Herron, filed his claim with the Industrial Accident Board more than six months after the accident took place. The Board made an award from which the insurance company, Texas Employers' Insurance Association, appealed to the District Court. Herron filed a cross-action to recover the benefits to which he contends that he is entitled under Art. 8306, Tex.Rev.Civ.Stat.Ann. (1967). Based on the jury's answers to special issues, the trial court entered judgment awarding Herron benefits for total and permanent disability. The appellant insurance company, Texas Employers' Insurance Association, perfected its appeal to this Court.
On August 22, 1975, Herron sustained personal injuries in the course and scope of his employment as a mechanic for Tradewinds Ford Sales, Inc., in Corpus Christi, Texas. Herron reported the injury to his boss, Fred Burke, vice president and service manager for Tradewinds Ford. Thereafter, in spite of several attempts, Herron was unable to return to work. Although the accident took place on August 22, 1975, Herron did not file his claim for compensation with the insurance company until September 4, 1976, approximately twelve and one-half months after his accident. Herron testified that during this intervening period, he received repeated assurances by Burke that he (Herron) should not worry about insurance because everything would be "taken care of". Herron testified that these assurances caused him to believe that any necessary paperwork would be taken care of by his employer. In August, 1976, Herron consulted an attorney who discovered that no claim for benefits had been filed. Immediately thereafter, Herron's claim was filed on September 4, 1976.
In addition to other special issues, the trial court submitted special issues to the jury requesting findings on whether or not good cause existed for the belated filing of Herron's claim. The jury made the following findings in response to the good cause special issues: 1) that within six months from the date of his injury, Tradewinds Ford or its agents had represented to Herron that notice of claim had been filed with the Industrial Accident Board; 2) that Herron believed continuously until about the time his claim was filed that his claim had been filed for him by representatives of Tradewind Ford; 3) that such belief caused Herron to delay filing a claim for compensation until the time the claim was filed; and 4) that such belief was good cause for Herron's delay in filing the claim for such period of time. The sole issues before us on appeal concern the sufficiency of the evidence to support the jury's answers to these special issues.
In workmen's compensation actions, the claimant must plead and prove that he timely presented his claim to the Texas Industrial Accident Board within six months after the occurrence of the accident. If the claim is filed after the expiration of the six-month period, the claimant must show that good cause existed for his failure to file the claim within the statutory time limit. Tex.Rev.Civ.Stat.Ann. art. 8307, sec. 4a (1967). Furthermore, when a claim has not been properly presented within the six-month period, the claimant must prove that good cause for failure to file continued up to the date of filing. Texas Casualty *552 Insurance Company v. Beasley, 391 S.W.2d 33, 34 (Tex.Sup.1965); Petroleum Casualty Co. v. Dean, 132 Tex. 320, 122 S.W.2d 1053 (1939). The meaning of the term "good cause", while not defined in Art. 8307, supra, was clearly set forth in Hawkins v. Safety Casualty Co., 146 Tex. 381, 207 S.W.2d 370, 372 (1948) as follows:
"The term `good cause' for not filing a claim for compensation is not defined in the statute, but it has been uniformly held by the courts of this state that the test for its existence is that of ordinary prudence, that is, whether the claimant prosecuted his claim with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances."
In accordance with these guidelines, the totality of the claimant's conduct must be considered to determine whether the test of ordinary prudence has been met. Lee v. Houston Fire & Casualty Ins. Co., 530 S.W.2d 294, 297 (Tex.Sup.1975); Moronko v. Consolidated Mutual Insurance Co., 435 S.W.2d 846, 848 (Tex.Sup.1968); Texas Employers Insurance Association v. Fowler, 140 S.W.2d 545 (Tex.Civ.App.Amarillo 1940, writ ref'd). The claimant's reason for delaying the filing of his claim is to be found principally in his own testimony. Texas Casualty Insurance Company v. Beasley, supra at 35.
Appellant insurance company brings forward eight points of error on appeal. These points of error are legal and factual insufficiency complaints directed to each of the above jury findings relevant to good cause. The thrust of appellant's appeal, however, is its contention that, even if we should find the jury's answers to special issues 1 through 3 above to be warranted by ample evidence, Herron, as a matter of law, failed to prove that degree of diligence necessary to support the jury's ultimate finding of "good cause" (special issue 4 above). Before addressing this contention, we consider appellant's legal and factual insufficiency points attacking the first three jury findings. A no evidence point of error is a question of law, and in considering the question, it is the duty of this Court to view the evidence in its most favorable light, considering only the evidence and reasonable inferences drawn therefrom in support of the judgment and to disregard all evidence and inferences to the contrary. Garza v. Alviar, 395 S.W.2d 821 (Tex.Sup. 1965); Transport Insurance Company v. Mabra, 487 S.W.2d 704 (Tex.Sup.1972). In deciding an insufficiency evidence point, this Court is required to consider all of the evidence. In Re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1951).
Fred Burke, vice president and service manager of Tradewinds Ford, had been a close personal friend of Herron for over twenty years at the time Herron sustained his injury. Burke characterized their relationship as a "very close" one. The Herrons and the Burkes made frequent social visits to each other's homes. Herron testified that Burke came to see him in the hospital and visited him in his home many times after the accident. Herron testified that during these frequent visits Burke would tell him: "Al, don't worry about insurance;" "everything will be taken care of down there [referring to Tradewinds Ford];" or "everything, all your insurance will be taken care of." On many occasions, Herron testified, Burke told him: "Al, do you need anything? If you need money, I can get you money from down there if you need money, but don't worry. Everything will be taken care of." Herron testified that similar statements were made to him on many occasions within the first six months after the injury. Herron stated that he believed Burke's statements and added: "Why shouldn't I believe him? He was my boss, and my friend, and he was a manager down there." Herron also testified in essence that he understood these statements to mean that Tradewinds Ford would take care of all the necessary paperwork, including filing a notice of claim with the Industrial Accident Board. The record indicates that Burke had never had a workmen's compensation claim before.
Burke testified to the effect that in his conversations with Herron, Burke never agreed to take care of all Herron's paperwork *553 in connection with the claim. Burke did admit, however, that he had agreed to "take care of it up to a reasonable point". When he was asked, "What's a reasonable point?", Burke responded:
"Oh, I visited him in his home. I tried to find out if I could help with anything over there. I got a couple of tires for his wife's car while he was sick. Me and my wife visited him in his home, andlet's see".
Concerning the assistance that Burke volunteered, Herron testified that he called Burke after the Tradewinds Ford's insurance secretary had called him to inform him that premiums were due under a small personal policy carried through the company. Herron, immediately called Burke who, in effect, told him not to worry about the premiums, that they would be taken care of by the company. Apparently Tradewinds Ford thereafter paid these premiums. Burke admitted that he had volunteered to take care of an insurance matter unrelated to Herron's workmen's compensation claim.
Burke stated that, as service manager, one of his duties was to "make sure that the first report of injury is immediately filed. After that, normally the secretary takes care of it." There is considerable testimony in the record indicating that the insurance secretary at Tradewinds Ford worked closely with Herron and his wife to file proper claims on other insurance policies carried through Herron's employer.
The parties stipulated that Tradewinds Ford and the appellant insurance company received actual notice of Herron's injury within 30 days of the occurrence. They further stipulated that the employer's first report of injury (the "E-1" report) was filed with the Industrial Accident Board on or about October 21, 1975. A resident reviewer for the Industrial Accident Board testified that after the receipt of the "E-1" report, the Board's procedure was to start a file relevant to the claimant's injury. Relying on the information contained in the "E-1" report, the Board would then mail instructions to the claimant concerning the procedures to follow in submitting a notice of claim to the Board. In this case, the "E-1" form did not contain Herron's proper mailing address. Herron testified emphatically that he did not receive instructions concerning such procedures. Nevertheless, Herron received weekly workmen's compensation checks for 23 weeks, beginning on approximately August 22, 1975, and continuing through February 2, 1976, a period of almost six months.
There is ample evidence to support each of the first three jury's findings in question. Herron had been employed with the same dealership for over 20 years, during which time Burke and Herron had a very close relationship. Burke visited Herron in the hospital and at home many times between the injury and the filing of the claim and repeatedly assured Herron that everything was taken care of. He assured Herron that he should not worry about his workmen's compensation claim. There is ample testimony to the effect that Herron believed that all of the necessary paperwork, including his notice of claim, had been filed. Herron started receiving workmen's compensation benefits shortly after his injury. The jury's answers to the first three good cause issues are not against the great weight and preponderance of the evidence. In Re King's Estate, supra. Appellant's first six points of error are overruled.
During oral arguments and, again, in its post submission brief, appellant insurance company admitted that good cause for Herron's delay existed, at least until Herron stopped receiving workmen's compensation benefits, approximately February 2, 1976. Appellant vigorously contends, however, that there is no evidence of "good cause" for the intervening period of approximately seven months which ended on September 4, 1976, the date Herron's claim was filed. Appellant argues, in essence, that during this period, Herron did nothing but rely on Burke's prior representations. Appellant contends that such cessation of benefits charged Herron with knowledge, as a matter of law, that no claim had been filed, and thereafter, Herron's continued reliance on Burke's prior statements was insufficient diligence.
*554 We must review the record in order to determine whether there is any evidence to support the jury's finding of good cause for the untimely filing. The appropriate appellate standard of review for this determination was recently reaffirmed by the Supreme Court in Lee v. Houston Fire & Cas. Ins. Co., supra, at 296.
"In Moronko v. Consolidated Mutual Insurance Company, 435 S.W.2d 846 (Tex. 1968), this court stated that to hold as a matter of law good cause is not shown is to hold that there is no evidence to support the jury's finding that the test of ordinary prudence has been met. If there is any evidence of care and prudence in the prosecution of the claimant's rights, the sufficiency of the evidence is a question for the jury. Texas Employers' Ins. Ass'n v. Crain, 259 S.W.2d 905 (Tex. Civ.App.Fort Worth 1953, writ ref'd n. r. e.). Thus, whether the claimant has exercised that degree of diligence required under the ordinarily prudent person test is usually a question of fact to be determined by the jury or trier of fact. It may be determined against the claimant as a matter of law only when the evidence, construed most favorably for the claimant, admits no other reasonable conclusion. Hawkins v. Safety Casualty Co., 146 Tex. 381, 207 S.W.2d 370 (1948)."
A claimant is presumed to know the law. Mere ignorance of the six-month filing requirement will not constitute good cause for delay in filing. Lee v. Houston Fire & Cas. Ins. Co., supra; Allstate Insurance Company v. King, 444 S.W.2d 602, 605 (Tex.Sup.1969). Payment of compensation benefits or medical bills by the compensation carrier may constitute good cause. Continental Casualty Company v. Cook, 515 S.W.2d 261, 263 (Tex.Sup.1974). Reliance on statements of employers or their agents may constitute good cause for a delayed filing. Lee v. Houston Fire & Cas. Ins. Co., supra at 297. However, mere reliance on an employer's promise to file a claim, without more, does not constitute good cause, particularly where 1) there is a lengthy delay between the promise and the ultimate filing date, or 2) the claimant had not been told that a report had actually been sent to the Board. See Allstate Insurance Company v. King, supra. See also Lee v. Houston Fire & Cas. Ins. Co., supra at 298.
The record does not support appellant's argument that Herron did "absolutely nothing about his compensation benefits" for the seven month period after his workmen's compensation checks stopped. The record shows that after the compensation checks ceased, Herron contacted Burke about the problem. Herron testified that Burke assured him that he would "check into it". He (Burke) then told Herron: "Things are taken care of, don't worry about it, Al." There is considerable evidence in the record to the effect that both Herron and his wife repeatedly attempted to gain information concerning the status of his workmen's compensation claim. There is testimony that Herron and his wife discussed insurance matters not only with Burke, but also the insurance secretary, and other managerial employees of Tradewinds Ford throughout the spring and into the early summer of 1976. Burke admitted that it was his personal knowledge that the insurance secretary had talked with Herron about his workmen's compensation insurance, but the exact time was not specified. Although the insurance secretary had informed Herron on other occasions when insurance matters needed attention, Herron was never told after the checks stopped that he needed to file a claim.
Herron testified, in effect, that he was repeatedly reassured that everything was all right by his conversation with Burke and by the fact that he was receiving some money on a short term disability policy issued by John Hancock Life Insurance Company. The payments under the John Hancock policy commenced at about the time his compensation ceased and continued thereafter until some time in August, 1976, just prior to the filing of the present late claim. In August, 1976, when his financial situation became critical, he consulted an attorney. The attorney investigated his case and discovered that no notice of his *555 claim had been filed with the Board. Shortly thereafter, on September 4, 1976, the attorney filed such a notice on Herron's behalf. Herron, in essence, testified that until he was informed that no claim notice had been filed, he was under the impression that Tradewinds Ford had completed all of the necessary paperwork, including such a claim notice.
Appellant relies primarily upon Allstate Insurance Company v. King, 444 S.W.2d 602 (Tex.1969) and Texas Employers Insurance Association v. Coronado, 519 S.W.2d 517 (Tex.Civ.App.San Antonio 1975, writ ref'd n. r. e.) to support its argument that there is no evidence of good cause in the present case. Herron, on the other hand, contends that the decision in Lee v. Houston Fire & Cas. Ins. Company, 530 S.W.2d 294 (Tex.Sup.1975) controls the disposition of this case. We have carefully examined each of these cases and conclude that Lee is factually more analogous to the case before us. As was the situation in Lee, more evidence is present here than a simple employer's promise to file a claim in the future. After Herron's compensation benefits had ceased, Herron testified he was told not to worry because "things are taken care of". (Emphasis ours). Herron, like Lee, did not rely solely on a future promise but on a present purportedly completed act.
There are still other factors present in this case. After Herron told Burke his compensation benefits had ceased, Burke promised he would "check into" the matter. Burke, who was Herron's boss, was a close personal friend. On previous occasions Burke had assisted the Herron family in company insurance matters and personal family affairs. Herron had no reason to doubt Burke. Under these circumstances, particularly since Burke not only reassured Herron that everything was in order, but also promised to investigate the mere cessation of workmen's compensation benefits is not as significant as appellant contends. Herron and his wife made several inquiries to Burke and the insurance secretary who both had established a practice of assisting the Herrons with insurance matters. This also is evidence of diligence.
Considering the facts and circumstances in the light most favorable to the jury's answer to this issue, we cannot agree with the appellant that the evidence presented in this particular controversy reveals that the late filing date was due to a lack of diligence as the only reasonable conclusion. It cannot be said that good cause for the untimely filing did not exist as a matter of law. We believe that Herron acted as an ordinarily prudent person would have under the same or similar circumstances as the jury so found. The question of good cause was properly one for the jury's determination in this case.
In addition to the evidence discussed above, we have carefully considered all of the remainder of the record and conclude that appellant's factual insufficiency point must also be overruled. The evidence supporting the jury's answer to special issue 4 above is not against the great weight and preponderance of the evidence. In Re King's Estate, supra.
The judgment of the trial court is AFFIRMED.