**PAN AMERICAN FIRE & CASUALTY COMPANY, Appellant,**

v.

**Mack HILL, Appellee.**

No. 6854.

Court of Civil Appeals of Texas, El Paso.

Aug. 8, 1979.

Rehearing Denied Sept. 5, 1979.

 

Thompson & Thomas, George L. Thompson, III, Lubbock, for appellant.

Townes & Corbin, Vernon A. Townes, Denver City, Don E. Williams, Law Offices of Bobby R. Bearden, Allen R. McFall, Midland, for appellee.

OPINION

OSBORNE, Justice.

This is a workers' compensation case which involves the issue of good cause for the late filing of a claim with the Industrial Accident Board and the issue of the claimant's wage rate. We reverse and remand.

The Appellee, Mack Hill, has owned and operated Mack Hill Oil Company, Inc., an independent gasoline and oil distributing company in Seagraves, Texas, since 1959. The Company has operated with three or four employees and Mr. Hill, as President, not only provided the management for the Company, but he did much of the actual work in driving trucks to deliver gas and oil to customers in Gaines County. In 1969, Mr. Hill became eligible for social security benefits and at that time he quit drawing his $500.00 a month salary from the Company although his work continued as usual. At the time of trial, his social security was not affected by his wages and his salary was $30,000.00 per year.

On May 16, 1971, Mr. Hill slipped and fell and broke his left hip. He was hospitalized in Lubbock, and a pin and plate were placed in his hip to repair the fracture. The injury resulted in the left leg being 2½ inches shorter than the right one. Mr. Hill has continued to operate and manage the business but he cannot do the manual labor which he did before the fall.

While he was in the hospital, the claims adjuster for the compensation carrier had Mr. Hill sign the "Employer's First Report of Injury" which was filed with the Board on May 21, 1971. The report reflected that Mr. Hill, age 71 and President of the Company, sustained a broken hip when he slipped in some oil and fell on May 16, 1971. The report reflected the name and address of a witness to the accident, the treating doctor and the hospital where Mr. Hill was being treated.

The compensation carrier paid all the medical expense and compensation benefits of $19.20 per week from May, 1971 until January, 1972. At that time, Mr. Hill was told by the adjuster that payments would be stopped until the final settlement was made. On February 3, 1972, the Board mailed a letter to Mr. Hill with a "Notice of Injury and Claim for Compensation" form and advised him that it was necessary for a claim to be filed within six months from the date of injury. Mr. Hill testified at the trial that he did not remember ever getting that letter.

On March 15, 1972, Mr. Hill and the adjuster signed an instrument designated "Employee's Wage Agreement." It states:

> The undersigned, who is an executive officer of the Mack Hill Oil Company, and who is not paid a salary and does draw social security, joined by the undersigned carrier, insuror of Mack Hill Oil Company, Seagraves, Texas, do hereby stipulate that a fair and just weekly wage upon which to base the weekly compensation rate in this claim before the Industrial Accident Board of Texas is $32.00 per week.

> The undersigned employee and insurance company further stipulate that a fair and just weekly compensation rate to apply in this case before the Industrial Accident Board shall be the sum of $19.20 per week.

On April 17, 1973, the Board sent another letter and "Notice of Injury and Claim for Compensation" form to Mr. Hill. It was received and the form promptly completed and filed with the Board on April 30, 1973.

In answer to the issues submitted, the jury found Mr. Hill was injured on May 16, 1971, in the course of his employment, and that the injury was a producing cause of

total and permanent incapacity. It also found that within six months of the date of injury, he believed his notice of injury and claim for compensation had been filed, that such belief caused him to delay filing a claim until it was filed, and that such belief was good cause for the delay in filing. It also found that Mr. Hill worked 210 days in the year preceding his accident and his average daily wage during such time was $25.00. Based upon those findings, the Court entered judgment for 401 weeks of compensation benefits with a compensation rate of $49.00 per week after allowing a credit of $672.00 for payments previously made.

■ The Appellant presents six points of error attacking the legal and factual sufficiency of the evidence to support the jury's answers to the issues on good cause for late filing of the claim. We decide these points under the rules established in *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965), and *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

Mr. Hill testified that the adjuster, whom he had known since 1958, visited him in the hospital and told him everything would be taken care of. Thereafter, his medical bills were paid and compensation began. Even when it was stopped, the adjuster acknowledged that a final settlement was to be made. Subsequently, the adjuster obtained the wage agreement. Finally, when the 1973 letter was received from the Board, the claim form was promptly completed and filed.

In *Moronko v. Consolidated Mutual Insurance Company*, 435 S.W.2d 846 (Tex. 1968), the court considered the issue of good cause for late filing of a claim where the agent of the compensation carrier advised the injured employee "everything is taken care of." In that case, the employee relied upon that representation and the weekly payments as proof that her claim had been filed. The court held the evidence was sufficient to support jury findings in favor of the claimant on the good cause issue.

In *Travelers Insurance Company v. Echols*, 508 S.W.2d 422 (Tex.Civ.App.—Texarkana 1974, no writ), the claimant was assured by the adjuster that "he would take care of everything, * * *." The court in that case affirmed a judgment for the workman and noted that no real distinction could be drawn between promises of what had already been done and ones of what was going to be done. Citing numerous authorities, the court said: "A number of other cases have sustained findings of good cause where similar representations were made by using the words 'will' or 'would,' rather than the words 'have' or 'had.'"

There are other cases in which good cause has been found to exist based upon representations by an agent of the compensation carrier that everything would be taken care of by the agent. *Texas Employers' Insurance Association v. Stateler*, 449 S.W.2d 533 (Tex.Civ.App.—Dallas 1969, no writ); *Travelers Insurance Company v. Strech*, 416 S.W.2d 591 (Tex.Civ.App.—Eastland 1967, writ ref'd n. r. e.). Similar results have been reached where the representations were made by an agent of the employer. *Texas Employers' Insurance Association v. Herron*, 569 S.W.2d 549 (Tex.Civ.App.—Corpus Christi 1978, no writ); *Charter Oak Fire Insurance Company v. Dewett*, 460 S.W.2d 468 (Tex.Civ.App.—Houston [14th Dist.] 1970, writ ref'd n. r. e.); *Texas General Indemnity Company v. Youngblood*, 466 S.W.2d 329 (Tex.Civ.App.—Fort Worth 1971, writ ref'd n. r. e.).

While most of those cases do not involve a delay of nearly two years from the time of the accident until the claim was filed, it must be remembered that Mr. Hill was paid weekly compensation benefits for eight months. When those benefits were stopped, the adjuster acknowledged that there would be a settlement of future benefits. Even later, the wage agreement was signed. If the employee did not have a claim pending, why would a wage agreement be necessary, particularly when weekly benefits had stopped? We cannot say that there is no evidence to support the jury findings. We believe the payment of all medical expense, eight months of weekly benefits and a promise by a claims agent

who Mr. Hill had known for fifteen years that everything would be taken care of was sufficient evidence to support the jury findings on good cause. Points of Error One through Six are overruled.

The next two points attack the legal and factual sufficiency of the evidence to support the jury finding that Mr. Hill's average daily wage which he earned during the days that he actually worked in the year preceding his injury was "$25.00." The wage rate question was submitted only under Subdivision (1) of Sec. 1, Art. 8309, *Tex.Rev.Civ.Stat.Ann.* The jury found that Mr. Hill did work 210 days of the year preceding his injury. The evidence supports that finding and there is no attack on that finding. If Subdivision (1) of the wage rate statute is applicable, then Subdivision (2) as to another employee and Subdivision (3) as to a wage that is "just and fair" have no application. *Aetna Insurance Company v. Giddens*, 476 S.W.2d 664 (Tex.1972); *Griffin v. Superior Insurance Company*, 161 Tex. 195, 338 S.W.2d 415 (1960); *Garcia v. Aetna Casualty & Surety Company*, 542 S.W.2d 477 (Tex.Civ.App.—Tyler 1976, no writ). In this case, the testimony of Mr. Hill is clear and uncontradicted that he had no salary and drew no wages during the year preceding his injury. He had not been paid a salary since he became eligible for social security in 1969. He testified that during this period the corporation was making $100.00 a week and this sum was being retained by the Company as profit. Subdivision (4) of Sec. 1, Art. 8309, *Tex.Rev.Civ. Stat.Ann.*, provides:

Said wages shall include the market value of board, lodging, laundry, fuel and other advantage which can be estimated in money which the employee receives from the employer as a part of his remuneration.

The Appellee now asserts that the $100.00 per week profit of the Company constitutes "other advantage" as set forth in Subdivision (4) of the wage rate statute. That provision in the Compensation Act provides that such board, lodging, laundry, fuel and other advantage is to be that "which the employee receives from the employer as a part of his remuneration" and we believe must necessarily be received during the year preceding the injury, just as actual wages, in order to be used in calculating a proper wage rate. Also, we do not believe profit of a corporation can necessarily be equated to an earned salary of the president, particularly when payment is deferred beyond the time the profit is earned.

Where there is insufficient evidence to sustain a proper finding on wage rate, the court may enter judgment for the minimum amount provided by the statute. *Garrard v. Texas Employers Insurance Association*, 423 S.W.2d 93 (Tex.Civ.App.—Amarillo 1967, no writ); *Sonnier v. Texas Employers Insurance Association*, 417 S.W.2d 433 (Tex.Civ.App.—Houston 1967, no writ). But, where the parties have entered into a stipulation in order to eliminate the necessity of making proof of average weekly wages, the judgment may be based upon the stipulation just the same as it could any other evidence. In this case, the stipulation was offered by the Appellee and received in evidence without objection from Appellant. While we recognize that the stipulation recites a wage rate to be used by the Industrial Accident Board, the rate before the Board should necessarily be the same before the court, and in this case the stipulation was offered not only to the Board but also in the Court. The carrier agrees to the entry of a judgment based upon that stipulation, if a judgment is to be entered in favor of Appellee.

We sustain Appellant's Points of Error Seven and Eight, and reverse the judgment of the trial Court and remand the case to that Court for entry of judgment based upon the stipulation of the parties as to the applicable weekly compensation rate.