NATIONAL UNION FIRE INSURANCE
CO. OF PITTSBURGH, PENNSYL-
VANIA, Appellant,

v.

Maria Y. MACIAS, Appellee.

No. 08–92–00292–CV.

Court of Appeals of Texas,
El Paso.

June 23, 1993.

Opinion Overruling Motion for Rehearing
Sept. 22, 1993.

Rehearing Overruled Oct. 20, 1993.

David R. Pierce, Scott, Hulse, Marshall, Feuille, Finger & Thurmond, El Paso, for appellant.

Evelina Ortega, Robert J. Perez, Caballero, Panetta & Ortega, El Paso, for appellee.

Before OSBORN, C.J., and BARAJAS and LARSEN, JJ.

## OPINION

LARSEN, Justice.

National Union Fire Insurance Company of Pittsburgh, Pennsylvania appeals this worker's compensation judgment, based upon the jury's findings that Maria Y. Macias was totally and permanently disabled, and that she had an average daily wage of $45 based upon her work 210 days the year preceding her accident. Finding insufficient evidence to establish that Ms. Macias was a 210-day worker, we reverse and remand to the trial court for a new trial.

### FACTS

Maria Yolanda Macias, a nurse's aide, worked at Sierra Medical Center in 1989. On November 21, 1989, a box of medical supplies fell off a shelf above her, knocking her to the ground. She raised her arms to ward off the blow, and the box struck her left arm and face. She experienced elbow pain and a nosebleed. Her treating orthopedist, Dr. Jacob Heydemann, instructed her not to return to work. As treatment for her injuries, Ms. Macias had nerve displacement surgery to her left elbow, and underwent physical therapy which led to complications in her neck, back, shoulders and right arm. She eventually had surgery for carpal tunnel syndrome in her right wrist, traceable to therapy for the left arm injury.

Ms. Macias testified her salary was $4.98 an hour, and the hospital gave her additional benefits of sick leave, vacation and a special premium for working in the critical care unit. She also testified that she had worked for Sierra as a nurse's aide for several years, forty hours a week, eight-hour shifts and that she had taken no time off the year before her accident. She introduced time cards and paycheck stubs in an effort to establish her work history in the year before her accident.

The jury found that: Ms. Macias was permanently and totally incapacitated as a result of her injuries; she sustained an injury to her left arm, resulting in total loss of use of that arm; her injury extended to and affected her right arm, but not her neck; her injury resulted in a total loss of use to her right arm; and she worked at least 210 days

in the year preceding her accident at an average daily wage of $45.

The trial court entered judgment for Ms. Macias for $53,667.89 based upon the jury's verdict. National Union appeals claiming there was legally or factually insufficient evidence to sustain the judgment that there was a general injury resulting in total and permanent incapacity, Ms. Macias had worked 210 days in the year before her accident and her average daily wage was $45.

### STANDARD OF REVIEW

■ In reviewing no evidence or legal sufficiency challenges, we consider only that evidence and all reasonable inferences which, viewed in the most favorable light, support the jury verdict. *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex.1987); *Alm v. Aluminum Co. of America*, 717 S.W.2d 588, 593 (Tex. 1986). If we find more than a scintilla of evidence supporting the jury's finding, the no evidence point fails. *Stafford*, 726 S.W.2d at 16; *Worsham Steel Co. v. Arias*, 831 S.W.2d 81 (Tex.App.—El Paso 1992, no writ); *Fuentes v. McFadden*, 825 S.W.2d 772 (Tex. App.—El Paso 1992, no writ).

■ In reviewing factual sufficiency challenges, however, we examine all the evidence, and set aside the verdict if the finding is so contrary to the great weight and preponderance of the evidence that the outcome of the case is clearly wrong and unjust. We may not pass upon the credibility of the witnesses or substitute our own judgment for that of the fact finder, even where the evidence would clearly support a different result. *Clancy v. Zale Corp.*, 705 S.W.2d 820, 826 (Tex.App.—Dallas 1986, writ ref'd n.r.e.).

■ Where an appellant raises both legal and factual insufficiency points of error, we consider legal sufficiency questions before reaching issues of factual sufficiency because we must consider points calling for rendition of a judgment before those requiring remand. TEX.R.APP.P. 81(c); *Lone Star Gas Co., a Division of Enserch Corp. v. Railroad Commission of Texas*, 767 S.W.2d 709, 710 (Tex.1989).

### TOTAL AND PERMANENT INCAPACITY

In its first point of error, the insurance company argues that there was no evidence to support the jury finding that Ms. Macias sustained a general injury that was a producing cause of her incapacity. Examined under the no evidence standard, then, we find the following: When the box fell on Ms. Macias, it struck her face at the right nostril, which caused frequent nosebleeds. On February 7, 1990, she had a cubital tunnel release to relieve pressure on the nerve in her left elbow. This is painful surgery done under general anesthesia. She was in an arm splint for seven to ten days, then had the surgical staples removed and started a program of physical therapy to increase the range of motion in the arm. Beginning in April 1990, her physical therapy caused sharp pain in her right arm, neck and upper back, radiating out to her shoulders. Dr. Heydemann later diagnosed this pain in the right arm as carpal tunnel syndrome. In April 1990, her range of motion was very restricted, she could only turn her head by moving her entire body. Moreover, an EMG in May 1990 indicated Ms. Macias had an abnormality not only in her right wrist, but also in the nerves at C–6, the neck. She also showed signs of right median carpal tunnel syndrome. Dr. Heydemann related these symptoms to the physical therapy she underwent as treatment after her left arm surgery. Dr. Heydemann believes that Ms. Macias's anticipated length of continued disability is "chronic" or "lifetime." Although Dr. Heydemann eventually released Ms. Macias to return to work, he restricted her from heavy lifting and suggested she do filing, clerical or medical-record type work. Dr. Heydemann gave Ms. Macias a disability rating of 25 percent for both the left and right upper extremities. He believes her injuries are permanent, but could not say how much limitation on work duties she would have long term. Ms. Macias will never work as a nurse's aide again, and she has not worked since the day after her injury. Ms. Macias is not able to perform common chores around the house, and at trial she had not improved much since 1990.

We find this evidence of total and permanent disability sufficient to survive a no evidence challenge. If an injured worker proves an injury to a specific member of the body, and also a concurrent general injury, the jury may consider the combined, unsegregated effects of the general and specific injuries in assessing incapacity. *Rivera v. Texas Employers' Insurance Association,* 701 S.W.2d 837, 839 (Tex.1986). There is evidence that Ms. Macias suffered a blow to the face as well as the left arm, that the blow affected the nerves from the neck to the wrist, and that she suffered neck, shoulder and back pain resulting from the physical therapy. She underwent two surgeries, to the left and right arms, traceable to the work-related accident. A claimant may recover for any disability that results from medical treatment instituted to cure or relieve her of the effects of her initial on-the-job injury. *Western Casualty and Surety Co. v. Gonzales,* 506 S.W.2d 303 (Tex.Civ. App.—Corpus Christi 1974), *aff'd,* 518 S.W.2d 524 (Tex.1975). Thus, the physical therapy complications could properly be considered by the jury in finding Ms. Macias totally and permanently disabled. The complaints of injury to the neck, back, shoulder and both arms are sufficient to sustain a finding of general injury. Her treating physician characterized her disability as "chronic" and "lifetime." We overrule Point of Error One.

### WAGE RATE

In its third point of error, the insurance company urges that there was no evidence to support the jury finding that Ms. Macias worked 210 days in the year preceding her injury. It is well established that the burden is on a claimant to establish her wage rate. *Texas Employers' Insurance Association v. Shannon,* 462 S.W.2d 559, 562 (Tex. 1970). To prove her wage rate under the old compensation law, the worker must use one of three methods, and each prior method must be shown inapplicable before the next may be utilized. TEX.REV.CIV.STAT.ANN. art. 8309 (Vernon 1967); *Aetna Ins. Co. v. Giddens,* 476 S.W.2d 664, 665 (Tex.1972); *Aetna*

*Casualty & Surety Co. v. Weaver,* 803 S.W.2d 850, 851 (Tex.App.—Corpus Christi 1991, no writ). Thus, the law required that Ms. Macias show she had worked at least 210 days of the year preceding her injury, or that she had *not* worked that many days. If she proved the negative, she was then required to prove up the wages of another employee doing the same or similar work in the same community who had worked 210 days, or that there was no such employee. If she proved the negative again, only then could she resort to the catch-all method of proving a wage rate that would be just and fair to both parties. *Giddens,* 476 S.W.2d at 665.

The jury found that Ms. Macias worked at least 210 days in the year immediately preceding her injury. It therefore did not reach the questions of whether another employee engaged in same or similar work for 210 days, or what would be a just and fair rate. We must consider then whether more than a scintilla of evidence supports the finding that Ms. Macias was a 210–day employee.

Under a no evidence review, we disregard evidence contrary to the jury's finding. The wage statements and time cards which were submitted as evidence by Ms. Macias, and which tend to show she was not a 210–day employee, are not considered. Ms. Macias's own testimony, however, established that she worked as a nurse's aide the entire year preceding her injury, but she could not remember how many days. She worked at least forty hours a week, usually worked eight-hour shifts and did not take time off during the year. Making all inferences in favor of the verdict, we find that this is some evidence that Ms. Macias worked more than 210 days in the years preceding her injury. We overrule Point of Error Three.

In its Point of Error Four, National Union raises a factual sufficiency challenge to the 210–day finding. Under this standard of review, the wage statements and time cards offered by Ms. Macias at trial preponderate against the jury's finding, and we are com-

pelled to hold that there is factually insufficient evidence to establish a wage rate under the 210–day method of computation.[1]

Evidence concerning the number of days worked by Ms. Macias was incomplete: besides her own rather vague testimony, it came from two sources, her time cards and her paycheck stubs. Plaintiff introduced both sets of documents. The time cards show, in a very straightforward way, how many days Ms. Macias worked during a two-week period. Her paycheck stubs, on the other hand, show only the gross number of hours worked. Nine time cards each cover-

ing a two-week period were missing; three paycheck stubs for two-week periods were missing. Two time periods had neither time cards nor check stubs indicating days or total hours worked. We must conclude the maximum number of days Ms. Macias could have worked during the relevant year was 196, fourteen short of the 210 days she needed to prove.[2]

Considering and weighing all the evidence, then, we are compelled to hold that the jury's finding that Ms. Macias worked 210 days in the year immediately preceding her injury is so contrary to the overwhelming weight of

1. Indeed, plaintiff's counsel acknowledged as much in final argument, saying:

> We move on the Question Number Six, that deals with did Maria Macias work in the employment for at least 210 days? I questioned the Sierra Medical Center employees about this. Nobody could tell me whether she did or not. *I think that the best response to that would be 'no'.* . . . [Emphasis added].

2.

| Pay Period Ending | Days Worked (Cards) | Hours Worked (Stubs) | Days Worked in Pay Periods With Similar Hours | Actual Days In Period (Worked or Not) |
|---|---|---|---|---|
| 12/03/88 | 7 | 59.25 | | |
| 12/17/88 | 8 | 83.50 | | |
| 12/31/88 | 6 | 58.25 | | |
| 01/14/89 | 7 | – | | |
| 01/28/89 | 7 | 84.25 | | |
| 02/11/89 | 7 | 77.50 | | |
| 02/25/89 | – | – | – | 14 |
| 03/11/89 | – | 71.25 | 7 @ 71.75 | |
| 03/25/89 | 5 | 38.75 | | |
| 04/08/89 | 5 | 40.00 | | |
| 04/22/89 | 6 | 47.22 | | |
| 05/06/89 | 5 | 41.75 | | |
| 05/20/89 | 4 | 31.50 | | |
| 06/03/89 | 5 | 39.50 | | |
| 06/17/89 | 4 | 32.00 | | |
| 07/01/89 | 6 | 54.75 | | |
| 07/15/89 | 6 | 53.00 | | |
| 07/29/89 | 7 | 65.50 | | |
| 08/12/89 | – | 94.75 | 10 @ 93.75 | |
| 08/26/89 | 10 | 93.75 | | |
| 09/09/89 | 10 | 89.25 | | |
| 09/23/89 | – | 101.50 | 10 @ 93.75 | |
| 10/07/89 | – | 81.50 | 10 @ 83.75 | |
| 10/21/89 | – | 97.00 | 10 @ 93.75 | |
| 11/04/89 | – | 58.75 | 7 @ 59.25 | |
| 11/18/89 | – | 84.25 | 10 @ 83.75 | |
| 11/21/89 | – | – | | 3 |
| Subtotal: | 115 | + | 64 | + 17 = |
| Total Days: | 196 | | | |

This table shows the days worked from time cards and the hours worked from pay stubs. Where there was a pay stub but no time card for a period, an approximate number of days can be inferred, giving Ms. Macias the benefit of the most days ever worked for those hours in other periods. For the two periods with neither pay stubs or time cards (one of which was the three days immediately before her accident), the total number of days in that entire period were added, giving Ms. Macias the benefit of working every single day during that period, even though she never did that in any other period. Nevertheless, the proof only shows Ms. Macias worked 196 days in the year immediately preceding her accident.

the evidence that it is clearly wrong and must be set aside. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). We sustain Point of Error Four.

■ National Union correctly points out that we possess two options in this situation, where an average weekly wage rate is supported by insufficient evidence: we can reverse and remand the case for new trial, or we can enter judgment based on the minimum weekly compensation benefit. *Giddens,* 476 S.W.2d at 665; *Pan American Fire & Casualty Co. v. Hill,* 586 S.W.2d 187, 191 (Tex.Civ.App.—El Paso 1979, writ ref'd n.r.e.). We see no reason to place this situation outside the general rule requiring a new trial where factual insufficiency mandates reversal. We therefore remand the case for new trial on the merits.

### AVERAGE DAILY WAGE

National Union's two remaining points urge the jury's finding of average daily wage at $45 was legally and factually insufficient. This question was conditionally submitted to the jury, to be answered only if it found Ms. Macias worked 210 days in the year before her injury. As there was insufficient evidence to find she worked the requisite number of days, it was improper to calculate her wage rate on that basis. We therefore need not reach Points of Error Five and Six. Having found it necessary to remand this case on the wage rate issue, we also need not reach National Union's Point of Error Two, which challenges the factual sufficiency of evidence supporting the jury's finding of total and permanent disability.

### CONCLUSION

The evidence at trial was factually insufficient to sustain the jury's finding that Maria Macias was a 210–day employee. We reverse the judgment of the trial court and remand the case for a new trial.

1. Plaintiff submitted a number of inquiries to the insurance company trying to ascertain her wage rate status. Defendant artfully dodged each inquiry. The defendant's evasive responses, while

### OPINION ON MOTION FOR REHEARING

What are days for?

Days are where we live.

They come, they wake us

Time and time over.

They are to be happy in;

Where can we live but days?

"Days"

The Whitsun Weddings

Philip Larkin

■ What is a "day"? This question, seeming so simple, is the conundrum we address upon motion for rehearing in this workers' compensation case. We must define "day" in the context of whether Maria Macias, a nurse's aide at Sierra Medical Center, worked 210 "days" for purposes of establishing her wage rate under the old Worker's Compensation Act. We do this bearing in mind that the jury was also asked to find her average "daily" wage. We find that the word day, in the workers' compensation context, means "work day" and although a work day may include parts of two calendar days, this does not create two "days" for purposes of establishing wage rate. To hold otherwise would throw the method of calculating wage rate into utter confusion, because the average daily wage could not then be established by looking at a full-time work day. We find that the legislature intended the phrase "210 days" as used in TEX.REV.CIV.STAT.ANN. art. 8309, § 1(1) and (2) (Vernon 1967) to conform with its use of the phrase "average weekly wage" in the same sections.

The word "day" is not defined in workers' compensation law. It is therefore to be given its commonly understood, everyday meaning. As set out in our original opinion, plaintiff Macias presented the jury with her timecards and paycheck stubs to establish her average daily wage rate. She often worked shifts of longer than eight hours lasting from one day into the next, over the midnight hour.[1] This, she urges, equates to two days under Webster's definitions:

they may have aided it in obtaining a reversal here, subvert the purposes of open discovery, as well as the intent of the Worker's Compensation Act.

2. the period of the earth's rotation on its axis ordinarily divided into 24 hours, measured by the interval between two successive transits of a celestial body over the same meridian, and taking a specific name from that of the body [i.e.] solar day....

3 a: CIVIL DAY b: *among most modern nations:* the mean solar day of 24 hours beginning at mean midnight ... *Webster's Third New International Dictionary,* 578 (3d ed. 1971).

In considering how to define the word "day" in other contexts, Texas courts have said:

[O]rdinarily the word "day," as used in the law, means a calendar day, and includes the time elapsing from one midnight to the successive one. [Citation omitted]. However, this rule was adopted and is followed merely as a matter of convenience in computing time, to obviate the necessity of having to make such calculation by hours, minutes, and seconds. [Citation omitted]. The term is not always so construed.

.    .    .    .    .

In order to determine what construction should be placed on the term "day," as used by the Legislature in the statute here under construction, we must look to the purpose intended to be accomplished by the Act and the effect that it will have when so applied to the subject matter. *Long v. City of Wichita Falls,* 142 Tex. 202, 176 S.W.2d 936, 938–39 (1944).

Similarly,

The word 'day' has no absolute connotation. It may as well mean a point of time as a period of time. *Phillips v. Reese,* 256 S.W.2d 162, 166 (Tex.Civ.App.—El Paso 1952, writ ref'd n.r.e.).

In the only case we have found addressing the meaning of "210 day" employee in a workers' compensation context, the Houston First Court was required to decide whether a part-time worker's wage rate should be determined using her own four-hour daily wage, or that of a similarly situated full-time employee. The Court formulated the question as follows:

The main question for our determination is whether the term "day," as used in Tex.Rev.Civ.Stat.Ann. art. 8309, sec. 1 (Vernon 1967) means a full eight hour day or whether it means any day on which an employee worked, regardless of the number of hours.

.    .    .    .    .

The dispute was over what comprised a 'day,' rather than the number of days worked or the hours worked during those work days. *Liberty Mutual Fire Insurance Company v. Richards,* 704 S.W.2d 399, 401 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.).

This is the same question we determine here. That Court held that "day" meant full-time work day, not calendar day, and thus the proper method for determining wage rate was by using the wage of a similarly situated full-time employee, not the part-time claimant. *Id.* It held:

[T]he fact that an employee is permitted to work only part of a day on certain days will not authorize the counting of part days as whole days, thereby reducing his average daily wage. *Richards,* 704 S.W.2d at 402.

The same reasoning applies here, although in a different situation. If we were to use the midnight-to-midnight definition of "day" to support the jury's finding that Ms. Macias was a 210–day employee, how could we then define "daily" in reviewing the jury's finding on her average daily wage? We find that the legislature in this context must have meant "day" and "daily" to refer to the same thing: a work day.[2] To hold otherwise would create an incongruity in the statute that the legislature surely did not intend.

Plaintiff/appellee's motion for rehearing is overruled, and the case is remanded for new trial.

2. This conforms with other definitions of the word: "a space of time" and "the hours or the daily recurring period established by usage or law for work [i.e. an eight-hour day]." *Webster's Third New International Dictionary,* 578 (3d ed. 1971).