BILL LONG ET AL V. CITY OF WICHITA FALLS.

No. 8093. Decided January 5, 1944.
Rehearing overruled February 2, 1944.
(176 S. W., 2d Series, 936.)

*Wayne Somerville* and *Ralph P. Mathis,* of Wichita Falls, for petitioners.

The Court of Civil Appeals erred in holding that petitioners could not recover upon quantum meruit for extra services rendered where they were employed under an express contract. Morrison v. City of Fort Worth, 138 Texas 10, 155 S. W. (2d) 908; City of Galveston v. O'Mara, 138 Texas 16, 146 S. W. (2d) 416; City of Amarillo v. York, 167 S. W. (2d) 787.

*T. A. Hicks* and *Thelbert Martin,* both of Wichita Falls, for respondent.

*Monning & Singleton,* of Amarillo, filed brief as amicus Curiae.

MR. CHIEF JUSTICE ALEXANDER delivered the opinion of the Court.

The decision of this case has been held up pending a submission of the companion case of City of Amarillo v. Bryan York, 142 Texas 210, 176 S. W. (2d) 935, this day decided.

Bill Long and seven others brought this suit in the District Court of Wichita County against the City of Wichita Falls, to recover sums alleged to be owing them for overtime services rendered by them as members of the fire department of said city. The judgment of the trial court was for the plaintiffs, but the Court of Civil Appeals dismissed the suit of W. J. Stone for lack of jurisdiction in the trial court and reversed the judgment as to the other plaintiffs, and rendered judgment in favor of the City. 167 S. W. (2d) 792.

The theory of plaintiffs' suit is that they were required to work for the City as firemen seven days per week, whereas under the law they could not be required to work more than six days in any one week, and as a consequence the City was indebted to them, as overtime, for the extra day which they were required to work each week.

Article 1583 of Vernon's Annotated Penal Code reads as follows:

"Art. 1583.

"1. No member of any fire department or police department in any city or more than twenty-five thousand (25,000) inhabitants shall be required to be on duty for more than six (6) days in any one week.

"2. The preceding subdivision shall not apply to cases of emergency.

"3. Each member of any such departments in any city or more than thirty thousand (30,000) inhabitants shall be allowed fifteen (15) days vacation in each year, with pay; provided that the provision of this Section of this Act shall not be applied to any member of any such departments in any city of more than thirty thousand (30,000) inhabitants unless such member shall have been regularly employed in such department or departments for a period of at least one year.

"4. Each preceding Federal Census shall determine the population.

"5. The City officials having supervision of the fire department and police department shall designate the days of the week upon which each such member shall not be required to be on duty, and the days upon which each such member shall be allowed to be on vacation.

"6. It shall be unlawful for any city of more than seventy-five thousand (75,000) inhabitants to require or permit any such firemen and policemen to work more than twelve (12) hours per calendar day or more than seventy-two (72) hours in any one calendar week and, in no event, more than one hundred forty-four (144) hours in any two (2) consecutive calendar weeks in the discharge of their duties except in case of emergency which may arise where it may become necessary to work more than twelve (12) hours per calendar day or more than seventy-two (72) hours in any one calendar week or more than one hundred forty-four (144) hours in any two (2) consecutive calendar weeks for the protection of property or human life; said firemen and policemen shall draw additional compensation for the number of hours worked in addition to the regular twelve (12) hour calendar day, or more than the regular seventy-two (72) hours in any one calendar week or more than

the regular one hundred forty-four (144) hours in any two (2) consecutive calendar weeks or if required to work on any day which has been designated as the day of the week that such member of said department should not be required to be on duty, additional compensation at the rate of time and one-half over time computed upon the basis of their monthly salary shall be paid to them for such additional time as they are required to work.

"7. It is further provided that in any city of more than seventy-five thousand (75,000) inhabitants that each member of any such department shall receive a sum of One Hundred Fifty ($150.00) Dollars per month as a minimum wage for said services so rendered.

"The city official having charge of the fire department or police department in any such city who violates any provision of this Article shall be fined not less than Ten ($10.00) Dollars nor more than One Hundred ($100.00) Dollars, and each day on which said city official shall cause or permit any section of this Act to be violated shall constitute and be a separate offense." (As amended Acts 1937, 45th Leg., p. 358, ch. 173, sec. 1.)

The City of Wichita Falls is a city with a population in excess of 30,000 and less than 75,000 inhabitants. The evidence shows that the firemen worked in shifts of twenty-four hours each beginning at 8:00 A. M. and continuing until 8:00 A. M. of the next day, and that they were then off duty for similar periods of twenty-four hours each, the rest period being from 8:00 A. M. on one day and continuing until 8:00 A. M. on the next day. Under this arrangement the firemen had at least three periods of full twenty-four hours each during each week in which they were not required to work.

It is the contention of the plaintiffs that the word "day," as used in the statute, means a calendar day, and that in order to comply with the statute the firemen were entitled to one off period of twenty-four hours each week, running from 12:00 o'clock at night until 12:00 o'clock the next night, and that no other period of twenty-four consecutive hours would satisfy the requirements of the statute. In other words, if they had been allowed one rest period each week of twenty-four hours, extending from midnight on one night to the next succeding midnight, the law would have been complied with and their rights fully protected; but since neither of the three twenty-four hour rest periods which they were allowed each week ex-

tended from midnight to midnight, the terms of the statute were violated. Under this construction, they contend that they were required to work at least a part of every calendar day, and therefore were not allowed a day off each week, as required by the statute. On the other hand, it is the contention of the City that the statute merely contemplated that the firemen should have a rest period of twenty-four consecutive hours each week, and since they had at least three such periods each week, the requirements of the statute were fully complied with.

■ It is true that ordinarily the word "day," as used in the law, means a calendar day, and includes the time elapsing from one midnight to the successive one. 41 Tex. Jur. 344; Dallas County v. Reynolds, 199 S. W. 702; Muckenfuss v. State, 55 Texas Crim. Rep. 229, 116 S. W. 51; 20 L. R. A. (N. S.) 783, 131 Am. St. Rep. 813. However, this rule was adopted and is followed merely as a matter of convenience in computing time, to obviate the necessity of having to make such calculation by hours, minutes, and seconds. State ex rel Jones v. Board of Deputy Tax Supervisors, 93 Ohio St. 14, 112 N. E. 136. The term is not always so construed.

The word "day" sometimes means "the space of time which elapses while the earth makes a complete revolution on its axis." This is one of the definitions given by Bouvier's Law Dictionary. See also People v. Hatch, 35 Ill. 1, p. 137. One of the definitions given by the New Century Dictionary is "The period of time during which the earth makes one revolution on its axis, the interval of time which elapses between two consecutive returns of the same terrestrial meridian to the sun; the average length of this interval, twenty-four hours." Webster's New International Dictionary gives substantially the same definition. See also Casner v. Hoskins, 64 Or. 254, 128 Pac. 841; State v. Padgett, 18 S. C. 317; U. S. v. Southern Pac. Co., 209 Fed. 562.

In order to determine what construction should be placed on the term "day," as used by the Legislature in the statute here under construction, we must look to the purpose intended to be accomplished by the Act and the effect that it will have when so applied to the subject matter. It is a matter of common knowledge that at the time Section 1 of the above Act was adopted in 1915, firemen were required to be on duty continuously twenty-four hours each day for seven days each week. The object in adopting that section of the statute was to secure to the firemen a rest period of at least one day each week, so as to protect their health and improve their efficiency as firemen.

This object will be as effectively accomplished if the firemen are allowed to rest some other period of twenty-four consecutive hours each week as it would be if they were allowed a rest period of similar length extending from midnight to midnight. In other words, it is not apparent how any good will be accomplished by confining the rest period to the calendar day so as to make it begin and end at midnight. Such a requirement would bear no relation to the object sought to be accomplished. On the other hand, to require that the shift be made at midnight might materially interfere with the wishes and conveniences of both the employer and the employees. It would certainly be more inconvenient for the firemen to change shifts at midnight than it would for them to change at some convenient hour in the daytime. In fact, according to the testimony of the fire marshall and the firemen, including all of the plaintiffs in this case who testified on the question, the firemen preferred to change shifts at eight o'clock in the morning instead of at midnight, and the schedule followed by the defendant was adopted at the request of the firemen themselves. We recognize, of course, that the statute could not be suspended by the mere agreement of the parties, but the above evidence does demonstrate that if we were to accept plaintiffs' interpretation of the statute we would be imposing an inconvenience on the firemen contrary to their wishes and yet we would not accomplish any good. The right of the employer and the employees to thus select, by mutual agreement, the hours of labor is a part of the liberty which they enjoy, and it should not be taken away from them by statute unless such is necessary to the accomplishment of some clearly declared public policy. We are unable to see how the public policy will be materially affected by allowing the rest period to begin at eight o'clock in the morning, as preferred by the firemen, instead of at midnight, as contended for by the plaintiffs.

Our position that the Legislature did not intend to restrict the rest period to be allowed firemen in cities of less than 75,000 population to a "calendar day" is evidenced, we think, by the language of the statute as a whole. Section 1 of the Act, which regulates cities of more than 25,000 and less than 75,000 inhabitants, provides that the firemen shall not be required to be on duty more than "six (6) days in any one week," and nothing is said about *calendar* days or *calendar* weeks. On the contrary, the Legislature, when it attempted to deal with cities of over 75,000 population in Section 6 of the Act, expressly stipulated that firemen should not be required to work more than twelve hours per *"calendar* day or more than seventy-two hours in any one *calendar week."* This, to our minds, evidences legislative intent that the *calendar* day and the *calendar* week

should be applied in regulating the work periods of firemen in cities with a population in excess of 75,000, but that such limitation should not be required in cities with a less population.

■ We hold that since the plaintiffs were allowed at least three rest periods of full twenty-four consecutive hours each week, they were not required to work overtime within the meaning of the statute, and are therefore not entitled to recover for such alleged overtime.

■■ We approve the holding of the Honorable Court of Civil Appeals with respect to the claim of W. J. Stone. According to the pleading, W. J. Stone claims reasonable value of services in the sum of $154.50. Therefore, it is not within the jurisdiction of the county court. It should be noted that by the Acts of 1935, 44th Legislature, p. 113, ch. 40, Vernon's Annotated Texas Civil Statutes, Article 1970-166b, the district courts of Wichita County are granted jurisdiction of civil cases which ordinarily lie in the county court. Stone seeks to maintain jurisdiction under Rule 40, Texas Rules of Civil Procedure. It was not the intention of this rule to change or enlarge the jurisdiction of the various courts of this State. In fact, there was no attempt to do so.

It seems to be a very well established rule that even though separate and distinct claims owned by different parties are such as may be joined in the same suit under Rule 40, if one of them is below the jurisdiction of a court it cannot be brought within the jurisdiction of such court by joining it with one that has the required jurisdictional amount. McConnell v. Frost, 45 S. W. (2d) 777, par. 1 (writ refused); Pettus v. Weyel, 225 S. W. 191, par. 6, (writ refused); Brown v. Cates, 99 Texas 133, 87 S. W. 1149; Meade v. Warring, 90 Texas 121, 37 S. W. 598; Gulf, C. & S. F. Co. v. Pearlstone Mill & Elevator Co. (Com. App.), 53 S. W. (2d) 1001; 15 C. J. 768, par. 64; 21 C. J. S. 80; 72 A. L. R. 194. The rule is stated in 72 A. L. R. as follows:

"Where several claimants have separate and distinct demands against a defendant or defendants, and join in a single suit to enforce them, they cannot be added together to make up the required jurisdictional amount but each separate claim furnishes jurisdictional test."

In an examination of the authorities cited in support of the rule there announced many cases will be found in which at least one of the claims was within the required jurisdictional amount, yet the court held that it did not have jurisdiction over other

claims that did not in themselves have the required jurisdictional amount.

In the case of Pettus v. Weyel, supra, a father brought suit for himself and as next friend for his minor child for personal injuries sustained by the child. He sought damages in the sum of $20,000.00 for the child and $500.00 for himself. The Court of Civil Appeals held that the district court did not have jurisdiction over the father's suit for $500.00 and dismissed his claim, but retained jurisdiction over the father's suit as next friend for the child for $20,000.00.

In the case of Brown v. Cates, supra, Field sued Cates for a sum less than $1,000.00 for breach of warranty of title, and joined Brown as a defendant. Cates reconvened for debt and to foreclose the lien on the land. It will be seen that Cate's suit to foreclose the lien on the land was clearly within the jurisdiction of the Supreme Court, but Field's suit for debt for less than $1,000.00 was not within its jurisdiction. The Supreme Court there said:

"The controversy between Cates and Brown is legally distinct from that between Field and Cates, and the fact that the parties have seen fit thus to include both in one cause does not make them so dependent one upon the other that jurisdiction over the former carries with it jurisdiction over the latter. Where cases which are entirely distinct are thus connected together, and one, considered by itself, is not within our jurisdiction because the amount in controversy is too small, we have declined to entertain it. Any other rule would put it within the power of parties to bring within the revisory jurisdiction of this court causes in which the law intends the action of the Court of Civil Appeals shall be final by merely joining them with others on which they are in no way legally dependent. The writ of error granted to plaintiff in error Cates will therefore be dismissed." See also to the same effect Meade v. Warring, 90 Texas 121, 37 S. W. 598. The Court of Civil Appeals at Texarkana has followed a different rule in the case of Myers v. Flewellen, 47 S. W. (2d) 657, and in Magnolia Petroleum Co. v. Wheeler, 132 S. W. (2d) 456; but these cases do not appear to be in accord with the well-established rule, and they are therefore overruled.

The judgment of the Court of Civil Appeals is affirmed.

Opinion delivered January 5, 1944.

Rehearing overruled February 2, 1944.