**Harold A. COON, Appellant,**

v.

**Frank B. SCHOENEMAN, Appellee.**

**No. 17752.**

Court of Civil Appeals of Texas, Dallas.

Jan. 21, 1972.

Rehearing Denied Feb. 17, 1972.

Henry Stollenwerck, Dallas, for appellant.

William Andress, Jr., Andress & Woodgate, Dallas, for appellee.

GUITTARD, Justice.

This suit was brought by the builder of eleven houses against the owner of the lots upon which they were built to recover a share of the profits from their sale, and in the alternative for the reasonable value of his services as builder. At the trial plaintiff abandoned his claim for profits and sought to recover the value of his services. The trial court excluded evidence of the value of his services and sustained defendant's motion for instructed verdict. Plaintiff appeals, contending that the trial court erred in refusing to permit proof of the elements of *quantum meruit* and in refusing to submit issues on *quantum meruit*.

The question is whether proof of an express contract for compensation as a share of profits excludes recovery for value of

services, where there is evidence that defendant's breach of the contract prevented plaintiff from completing it. We hold that plaintiff could elect to recover the value of his services and was entitled to go to the jury on his alternative plea.

■ The question turns on the distinction between damages and restitution as remedies for breach of contract. Damages is the amount which would put plaintiff in as good position as if the contract had been performed by both parties. It gives him the benefit of his bargain, including any profit he would have made, and is determined by the contract price, less any amount saved by his being excused from further performance. Restitution is the amount which would put plaintiff in as good a position as he would have been in if no contract had been made. It restores to plaintiff the value of what he parted with in performing the contract. 5 Corbin, Contracts §§ 996, 1102 (1964). When defendant has committed a breach of contract which is serious enough to excuse plaintiff from performing further, plaintiff is entitled to elect between these remedies. Restatement, Contracts § 347, and comment *b* following (1932); 5 Corbin, op. cit. supra, §§ 1104, 1109. He may pursue both remedies in the same suit by alternative pleadings and make his election at the trial. 5 Corbin, op. cit. supra, § 1110 at 590. The remedy of restitution, which is normally pursued by an action in *quantum meruit* for reasonable value of services rendered, is not under these circumstances an action upon an implied or quasi-contract, as in a case where there is no express contract and plaintiff sues for reasonable value of services accepted by defendant. It is rather an alternative remedy for breach of an express contract. Id. § 1106. The measure of such restitution is the value of plaintiff's services on the market rather than the benefit to defendant. Id. § 1107.

■ An important limitation on the right of a plaintiff to elect between the remedies of damages and restitution is that when plaintiff's performance of the whole or a separable part of the contract entitles him to compensation in an agreed amount or at an agreed rate, he is limited to the compensation specified in the contract. This rule is stated in Restatement, Contracts §§ 350, 351 (1932) as follows:

"§ 350. The remedy of restitution in money is not available to one who has fully performed his part of a contract, if the only part of the agreed exchange for such performance that has not been rendered by the defendant is a sum of money constituting a liquidated debt; but full performance does not make restitution unavailable if any part of the consideration due from the defendant in return is something other than a liquidated debt."

"§ 351. Restitution is not available as a remedy with respect to any performance by the plaintiff for which a definite part of the consideration was apportioned in the contract as its equivalent in exchange, if

(a) the consideration so apportioned has been rendered in full, or

(b) it is a liquidated sum of money."

This limitation is reasonable because if plaintiff has obligated himself to perform services for a certain amount, and he has already earned that amount, it is just to measure his compensation by the amount he agreed to take for such services. 5 Corbin, op. cit. supra §§ 1110, 1111. The authorities relied on by defendant fall into this category. They hold that upon performance of an express contract for the rendition of services for a certain price, the contract fixes the measure of compensation and precludes recovery in *quantum meruit* for the value of services rendered. Roby Industries, Inc. v. Maxwell Electronics Corp., 409 S.W.2d 559 (Tex.Civ.App., Dallas 1966, writ ref'd n. r. e.); Musick v. Pogue, 330 S.W.2d 696 (Tex.Civ.App., San Antonio 1959, writ ref'd n. r. e.); City of Wichita Falls v. Long, 167 S.W.2d 792

(Tex.Civ.App., Fort Worth 1942, aff'd 142 Tex. 202, 176 S.W.2d 936). On the other hand, in cases where plaintiff's complete performance has been prevented by defendant's breach, Texas authorities support the first rule above stated, that plaintiff may elect either to recover his damages under the contract or treat the contract as rescinded and recover the reasonable value of his work in *quantum meruit*. Dill v. Helms, 468 S.W.2d 608 (Tex.Civ.App., Waco 1971, no writ); Montclair Corporation v. Earl N. Lightfoot Paving Co., 417 S.W.2d 820 (Tex.Civ.App., Houston 1st Dist. 1967, writ ref'd n. r. e.); Tower Contracting Co. v. Flores, 294 S.W.2d 266 (Tex.Civ.App., Galveston 1956, modified and affirmed 157 Tex. 297, 302 S.W.2d 396); Dodds & Wedegartner, Inc. v. Reed, 69 S.W.2d 165 (Tex.Civ.App., Dallas 1934, writ dism'd); Live Oaks Dairy Corp. v. Kaase, 45 S.W.2d 657 (Tex.Civ.App., San Antonio 1931, writ ref'd).

▇ Application of these principles to the present case brings us to the conclusion that plaintiff's evidence raised issues for the jury as to breach by defendant preventing his further performance and the reasonable value of his services. The only evidence is the testimony of plaintiff Harold Coon. He testified that defendant Frank Schoeneman had told him he had certain lots in Irving and Arlington and that he needed somebody to build houses on them. Schoeneman proposed that Coon build the houses, Schoeneman would finance them, they would get a third person to sell them, and they would split the profits three ways. Coon agreed and started building. After he had built seven houses in Irving, including six "model homes," and had started four in Arlington, Schoeneman told him the rest of the Irving lots had been sold and proposed that Coon proceed with the project in Arlington on a different deal, which was that Coon would pay him $350 a house, Schoeneman would furnish the lots, and Coon would get all the profit. Coon agreed, with the understanding that he would have five houses under construction or ready for sale continuously and that no lots should be sold to other builders in the immediate area. Schoeneman agreed to these conditions. When Coon had finished four houses on the Arlington lots and was ready to start a fifth, he discovered that Schoeneman had sold the rest of the lots and other contractors were preparing to build on lots next to the houses Coon had built. Coon built no more houses on Schoeneman's lots. Schoeneman said he would send Coon his part of the profits from the houses that were built, but he sold the houses and never gave Coon any of the proceeds. Coon never received anything for his work.

Defendant objected to plaintiff's testimony concerning the value of his services on the ground that the proof established an express agreement to share profits and plaintiff was limited to recovery of such profits. The objection was sustained, and plaintiff gave his testimony concerning the value of his services in the form of a bill of exceptions. At the close of plaintiff's direct testimony the trial court sustained defendant's motion to instruct a verdict in his favor on the ground that plaintiff had shown only that there was a verbal agreement to share profits, but had not shown that there were any profits.

Since the trial court instructed a verdict for defendant, we must view the evidence in the light most favorable to plaintiff. Viewing Coon's testimony in that light, we conclude that a jury would have been justified in finding that Schoeneman breached the contract by selling off the Arlington lots contrary to his agreement that he would allow Coon to keep five houses ready for sale or under construction and would not sell lots to other contractors in the immediate area. Coon was thus prevented by Schoeneman's breach from building any more houses. Though the oral contract, as described by Coon, is not definite as to how many houses Coon was entitled to build, it did give him the right to build at least five and to be free from competition by other builders on Schoene-

man's lots in the immediate area. On Schoeneman's breach of that agreement, Coon was entitled under the above authorities either to sue for his damages under the contract, including his share of profits on the houses he had built and the profits he would have made on other houses, or to treat the contract as rescinded and recover the reasonable value of his services.

We have considered whether the contract was divisible and the consideration apportionable, so that on completion and sale of each house plaintiff became entitled to compensation in a liquidated amount for his share of the profit and should be limited to that amount. Probably the contract is not divisible, since six of the houses in Irving were "model homes," which presumably were not expected to be sold at as much profit as others to be built. The mere fact that there is a contract rate of payment per unit of performance does not make the contract divisible, since the parties may not have been willing to contract separately for each unit. 5 Corbin, op. cit. supra § 1111 at 593. However, we conclude that the divisibility of the contract does not matter, since even if the profits were apportionable to each house, the amount was not liquidated. It depended on the sale price and the various factors making up the cost. Consequently, under the rule stated in either § 350 or § 351 of the Restatement, plaintiff was not limited to the contract measure of compensation.

The case is analogous to one in which the agreed exchange for services is something other than a determinable amount of money, such as property or an interest in the business. In that case even a plaintiff who has fully performed may recover the reasonable value of his services rather than the value of what was promised to him. Coens v. Marousis, 275 Pa. 478, 119 A. 549 (1923); 5 Corbin, op. cit. supra § 1110 at 587. This rule seems to be based on the idea that since plaintiff cannot obtain his specific *quid pro quo* un-

der the contract, and proof of its value may be difficult, he should not be limited to recovery of damages but should be able to recover the reasonable value of his services by way of restitution. Likewise, in this case, since defendant repudiated the contract and prevented plaintiff from continuing performance, plaintiff is entitled to elect his remedy of restitution, and should not be required to assume the burden of establishing the profit on the sale of each of eleven houses in order to recover compensation for his services.

One of the problems here is that both of the oral contracts described by plaintiff provided for compensation in terms of profit, and, therefore, contractual compensation was contingent on the existence of profits, which were not proved. Thus defendant contends that plaintiff failed to prove that he was entitled to any compensation at all. The question is whether the contingent character of the contractual compensation renders unavailable the alternative remedy of restitution, so that plaintiff is without remedy for defendant's breach unless he can prove that profits were realized in the past, or would have been realized in the future if the contract had been fully performed.

In our opinion the contingent nature of the contractual compensation does not affect the plaintiff's right to restitution upon defendant's material breach of the contract. Proof that no profits were made on the houses sold would not establish that no profits would have been realized if defendant had complied with the contract. Presumably, greater profits were anticipated from sale of subsequent houses than from the "model homes." Moreover, defendant's principal breach was his sale of adjacent lots to competing builders. Such a breach may in itself have prevented any profit on the four houses in Arlington or may have reduced the amount of profit, but proof would be difficult. The party who has wrongfully prevented the other party from completing the contract should not benefit from his own wrong. Conse-

quently, we hold that even though the contractual compensation was contingent on profits, the same rule of restitution applies as in other cases where defendant's breach has prevented further performance by plaintiff. Plaintiff should have his election to treat the contract as rescinded and recover the reasonable value of his services.

On oral argument there was discussion of whether the contract created a partnership or joint venture so that plaintiff was not entitled to bring the suit without seeking an accounting of the affairs of the partnership or joint venture. On examination of the record we do not find that the evidence shows as a matter of law that the relationship was a partnership or joint venture. Moreover, the modified contract as applied to the Arlington project was not a profit-sharing arrangement, since Coon was to get all the profits after paying Schoeneman $350 per house. Consequently, plaintiff's claim is not limited to an accounting.

Reversed and remanded.