The CITY OF LUBBOCK, Texas and the Civil Service Commission of the City of Lubbock, Texas, Appellants,

v.

Dean ELKINS, Appellee.

No. 07–94–0182–CV.

Court of Appeals of Texas, Amarillo.

March 17, 1995.

Dennis W. McGill, Arthur & Arthur (Lane Arthur), Lubbock, for appellants.

John C. Ross, Jr., City Atty., Jean E. Shotts, Jr., Trial Atty., Jeff Hartsell, Asst. City Atty., Lubbock, for appellee.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

BOYD, Justice.

In twelve points of asserted error, appellants, the City of Lubbock (the City) and the Civil Service Commission of the City of Lubbock (the Commission), challenge an order of the trial court ordering the City and the Commission to afford appellee Dean Elkins an appeal of his indefinite suspension from the City's police force. For the following reasons, we reverse the judgment of the trial court and render judgment in favor of appellants.

There are two determinative questions presented in this appeal. The first question concerns whether the provision in section 143.052(d) of the Texas Local Government Code[1] requiring a party wishing to appeal from an indefinite suspension to file a written appeal with the Commission "within 10 days after the date the person receives the copy of the statement," refers to ten (10) calendar

---

1. Tex.Local Gov't Code Ann. § 143.052(d) (Vernon 1988). Later references to section numbers are to sections of this Code unless otherwise specifically designated.

days or ten (10) working days. The second question concerns whether the City and the Commission can be estopped from asserting a failure to comply with the ten-day period.

On April 30, 1993, at 10:30 a.m., appellee was indefinitely suspended without pay from the City of Lubbock Police Department for alleged acts showing lack of good moral character, conduct prejudicial to good order, and violations of the rules of the police department. *See id.* § 143.051(6), (8), (12). On that same date, appellee received a copy of the suspension order and was notified, in writing, that if he wished to appeal the order, he had to file a written appeal with the Commission within ten (10) days from that date. *See id.* § 143.052(d). No further instructions were given to appellee with respect to the appeal procedure. However, at the trial before the district court, appellee testified that after he received a copy of his suspension, he contacted Lieutenant Thomas Esparza, an Internal Affairs investigator of the police department who had been investigating the allegations against appellee. Esparza referred appellee to Mark Bell, the Personnel Director/Director of Civil Service for the City. Bell was the only person the police department advised him to talk with concerning additional information about the proper procedure to effect an appeal from the suspension.

Appellee further testified that on May 3, 1993, he and his wife, Wendy, met with Bell to discuss a possible appeal of his suspension, the ramifications of such an appeal, how to go about filing the appeal, including whether the ten-day appeal period meant ten working days or ten consecutive days, and whether he should obtain an attorney to handle the appeal. Appellee also averred that during the meeting, he informed Bell that he had no experience with Commission proceedings and that Bell explained that as the Director of the Civil Service, he "was there to give advice and kind of direct [him] in the right way and give [him] the information that [he] might need to do what [was] required for the appeal."

Wendy Elkins also testified concerning the meeting with Bell. She explained that she and appellee met with Bell to discuss any questions they might have concerning what they needed to do to appeal appellee's suspension and the need, if any, for an attorney. During the course of the meeting, they discussed the filing of an appeal and Bell told them that as the time limit was not clearly stated in the statute, "he always gave the employee ten working days to file an appeal."

Wendy also testified concerning certain statements Bell made to her during the preliminary hearing before the Commission. According to her, Bell stepped out into the hallway where she and her stepmother were standing and told them the Commission was discussing whether to hear appellee's case, as he did not file it within ten calendar days. She stated that she reminded Bell that he had told them they had ten working days within which to file the appeal and he replied, "Yeah, I know."

Bell testified that as Director of Personnel in Civil Service, he was responsible to, and had the authority to act on behalf of, the Commission. In this position, he was responsible for the procedural administration of the Commission which entailed such matters as setting up meetings, insuring the meetings were timely held, and having agendas posted and minutes taken of the meetings. While acknowledging that his position served as a form of liaison between the police officers and the Commission, he denied that it was the function of the Director of Personnel to serve as an advisor to the officers. Instead, Bell described his position as a neutral one whereby he merely acted as an informant to the police officers as to what law was available in order to assure the officers their rights.

Bell also denied that "advice giving" was a part of his responsibilities. He acknowledged that anyone, an employee or a member of the public, seeking information concerning any matter related to civil service law, positions or employment, would be directed to him. He also admitted he was the primary source of information to the City on civil service matters.

During his employment as Director of Personnel, Bell consistently interpreted procedural time restrictions as limiting the number of working days in which the employee,

the City, or the Commission could take certain actions. In his opinion, to interpret the statutory time limits concerning status of employment as limiting calendar days would "potentially give[ ] unequal appeal conditions among covered employees." He explicated that one of his purposes as Director was to apply consistent, clear and regular interpretations of the civil service law.

Appellee also averred that during their meeting, Bell stated that he always interpreted the time period for appeal as ten working days and that he could recommend a few attorneys if appellee wished him to do so. Bell stressed that several pitfalls existed in the process and that an attorney would be very helpful in avoiding such hazards, but that appellee would have to make his own decision as to whether to hire someone to represent him. Bell also gave appellee copies of certain sections of the Civil Service Code, highlighting various provisions to which appellee would need to pay special attention. It was appellee's belief that Bell was trying to help and not mislead him and he relied upon the representations Bell made at the meeting.

Bell testified he met with appellee and his wife on May 3, 1993, to discuss whether the circumstances of appellee's suspension were subject to public scrutiny under the Open Records Act and how an appeal would affect that status. Bell admitted that they discussed the options available to appellee if he wished to appeal and whether he should have legal representation and, if so, what attorneys Bell would recommend. However, Bell denied that he ever, at any time, discussed with appellee the time for filing an appeal or his interpretation of the ten-day period within which an appeal must be filed.

While Bell admitted he discussed the ten-day appeal period with appellee's attorney, as well as his understanding that the provision was interpreted as ten working days, he maintained that the discussion did not take place until the afternoon of May 12th, 1993, two days after the ten-calendar-day deadline for filing an appeal had expired. Bell also admitted previous conversations with appellee's attorney concerning the application of civil service law time periods and that it was

his consistent practice to interpret such periods as referring to working days.

Carroll Bartley, the .assistant police chief of the City of Lubbock Police Department, testified that he and the police chief believed that Bell, as the Director of the Civil Service, was the proper person to interpret the ten-day provision in the statute and it was the practice in the department to discuss that type of question with Bell. Commissioner Benni Hemmeline testified that during a preliminary hearing before the Commission, Bell stated that he "makes some interpretations and feels called upon to give some interpretations of what the law says periodically." Hemmeline also testified that several times during the hearing, appellee's attorney alluded to the fact that he had discussed with Bell, prior to May 10, 1993, his interpretation of the ten-day period but that Bell consistently denied any such conversation.

At the conclusion of the preliminary hearing, the Commission determined that it had no jurisdiction to hear appellee's appeal from the suspension order and dismissed the appeal. Appellee then filed the suit giving rise to this appeal, wherein he sought an order from the district court determining that the Commission had jurisdiction to consider the merits of his appeal from the suspension order and requiring the Commission to proceed to hearing on his appeal.

In their sixth, ninth, and twelfth points, appellants challenge the district court's findings that Bell was a proper person upon which appellee could rely in filing his appeal, and that Bell, on behalf of the City and the Commission, made certain statements to appellee and his attorney upon which appellee detrimentally relied.

■ Parenthetically, we also note the claim of appellee's attorney that he had a brief discussion with Bell on May 7, 1993 during which they discussed the "construction or interpretation to be placed upon the word days." However, the only implication in the record before us of any alleged conversation that may have occurred between Bell and appellee's attorney came from comments the attorney made during his cross-examination of Bell. Such statements constitute un-

sworn testimony and do not constitute proof of the alleged facts. *McDuffie v. Blassingame,* 883 S.W.2d 329, 336 (Tex.App.—Amarillo 1994, writ denied).

■ As the trier of fact in this bench trial, it was the peculiar province of the judge to determine the credibility of the witnesses and the weight to be given their testimony, to believe or disbelieve all or any part of the testimony, and to resolve any inconsistencies in the testimony. *Robbins v. Roberts,* 833 S.W.2d 619, 624 (Tex.App.—Amarillo 1992, no writ).

Reviewing the record under the standards set out by this court in *Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co.,* 766 S.W.2d 264, 276 (Tex.App.—Amarillo 1988, writ denied), we are satisfied that the evidence was both legally and factually sufficient to support the challenged findings, with the exception of the trial court's finding concerning representations made to appellee's attorney challenged in appellants' twelfth point. Appellants' sixth and ninth points are overruled and their twelfth point is sustained.

Having made that disposition, we must now consider appellants' first, third, fourth, and fifth points. The gravamen of these points is that the trial court erred in concluding that appellee timely filed his appeal.

Because of the trial court's resolution of the fact questions against the City and the Commission, and our determination that the evidence was sufficient to support those findings, the burden is on appellants to establish their contention as a matter of law. In deciding this point, it is necessary to review the law governing the appeal process from a disciplinary suspension such as that involved in this appeal. Chapter 143 of the Texas Local Government Code regulates the employment, suspension and termination of police officers in the various municipalities of the state. *See* Tex. Local Gov't Code Ann.

§§ 143.001–.209 (Vernon 1988 & Supp. 1995). With regard to the appeal of a disciplinary suspension, section 143.010 provides:

> Except as otherwise provided by this chapter, if a fire fighter or police officer wants to appeal to the commission from an action for which an appeal or review is provided by this chapter, the fire fighter or police officer need only file an appeal with the commission *within 10 days* after the date the action occurred.

(emphasis added). The gist of the controversy before us concerns the interpretation of the word "days" as used in this provision. While the Commission and the City reason the statute requires an appeal to be filed within ten (10) calendar days, appellee argues that ten (10) working days are allowed within which to file the appeal.

■ Perusal of Chapter 143 reveals the legislature clearly recognized the significance of using various terminologies for determining limitation periods as it utilized the following nomenclature throughout the chapter, *viz:* days, calendar days,[2] working days,[3] and business days.[4] Where the statute itself does not define the sense in which the term "day" is used, as is the case here, the general rule is to use the term's ordinary meaning in construing the statute. *Geters v. Eagle Insurance Co.,* 834 S.W.2d 49, 50 (Tex.1992); *Hopkins v. Spring Independent School Dist.,* 736 S.W.2d 617, 619 (Tex.1987).

■ The term "day," as used in the law, ordinarily means a "calendar day" and includes the time elapsing from one midnight to the successive midnight. *Long v. City of Wichita Falls,* 142 Tex. 202, 176 S.W.2d 936, 938 (Tex.1944). However, that definition is followed merely as a matter of convenience in computing time, to obviate the necessity of having to make calculations of hours, minutes, and seconds, and is not always so construed. *Id.* For example, a "day" may be construed as any twenty-four consecutive hour period. *Id.* at 939. The underlying rationale used by the courts in determining

---

**2.** *See, e.g.,* Tex.Local Gov't Code Ann. §§ 143.052, .082, .016, .128, .131 (Vernon 1988 & Supp.1995).

**3.** *See, e.g.,* Tex.Local Gov't Code Ann. §§ 143.045, .046, .115, .130 (Vernon 1988 & Supp.1995).

**4.** *See, e.g.,* Tex.Local Gov't Code Ann. § 143.034 (Vernon Supp.1995).

what construction should be placed upon the term is to look to the purpose intended to be accomplished by the provision within which the term is used and the effect that various interpretations of the term will have when applied to the subject matter. *Id.*

■ After an employee is suspended, he or she is immediately given a copy of the written statement of the charges incident to the indefinite suspension which was filed with the Commission. *See* Local Gov't Code Ann. § 143.052(c) (Vernon 1988). The statement must point out each civil service rule alleged to have been violated by the suspended employee and must describe the alleged acts of the person that the department head contends are in violation of the civil service rules. *Id.* § 143.052. That statement eliminates the need for an intensive fact finding investigation. Additionally, the simplified requirements for the content of the appeal are clearly set out in the statute.[5] This initial "notice" of appeal merely apprises the Commission and the City that the suspended employee is contesting his or her suspension. The actual hearing on the matter is not held until a later date, either within 30 days after the date the notice of appeal is received or on a date agreed upon by the suspended employee. *Id.* § 143.053(b). Considering all of these surrounding circumstances, we conclude the purpose of the provision at issue must be to limit the period of repose and establish a beginning point in time for further mandatory proceedings and actions, with the end in view to proceed to an early disposition of the dispute for the benefit of all concerned.

■ We must next consider the various interpretations of the term "days" and the possible effect those interpretations would have upon the statute. Appellee, of course, suggests the term "days" be interpreted as "working days." We find several flaws in this reasoning. First, as the legislature has never defined the term "working day," there is a lack of guidance in determining legisla-

tive intent in the use of such a term. Second, the indefiniteness engendered by judicial insertion of the term would undoubtedly result in varied interpretations by individual courts. For example, the time period could be measured by the aggrieved police officer's working day, what has become in many instances the normal commercial working day of "8 to 5," however, with a variance from metropolitan area to metropolitan area and from urban to rural areas, or the period could even be measured by the commission's typical working day. If the time period is measured by an individual police officer's working day, additional difficulties arise as a "working day" would vary from officer to officer, depending upon the officer's individual schedule, thereby creating an indefinite period of appeal varying from case to case. We do not believe the legislature intended to create such an indeterminate period within which to initiate the mechanism for appeal, nor do we believe they intended to lend immortality to disputes by indefinitely extending the time periods within which such a simple matter as a notice of appeal may be given. Accordingly, we cannot agree that by its use of the term "days" the legislature really intended to refer to "working days."

Although we do not believe, for the reasons expressed above, that the legislature used the term "day" in the sense of a "working day," we do note that the legislature used the term "calendar day" several times throughout the statute but chose to use the simple term "day" in referring to the procedure for an appeal to the Commission. By doing so, we conclude the legislature intended a measure somewhat different from the traditional midnight to midnight measure of a "day." Rather, we conclude the legislature intended to use the traditional twenty-four hour measure of a "day" and intended that period to run from the time the civil service employee received his or her notice of suspension.[6] Application of this construction to the time provision will result in uniform peri-

5. We suggest the better practice would be to include a description of the necessary contents of an appeal in any information given the suspended employee concerning the notice of appeal.

6. Our decision is strengthened by the fact that the legislature chose to require the department

head, after suspending a police officer, to file a written statement with the Commission giving the reasons for the suspension "within 120 *hours* after the hour of suspension." Tex.Local Gov't Code Ann. § 143.052(c) (Vernon 1988) (emphasis added).

ods for computation of the ten-day period with the laudable result that any uncertainty about the time limitation is removed. This interpretation may easily be applied as the exact time the employee received his or her copy of the suspension order is clearly noted upon a written receipt.

■ Pursuant to this interpretation, appellee had until 10:40 a.m. on May 10, 1993, within which to file an appeal from his suspension. However, he did not file his notice of appeal until May 14, 1993. Therefore, we must sustain appellants' first, third, fourth, and fifth points and hold the trial court erred in finding appellee timely filed his appeal, as it is undisputed that the appeal was not filed prior to the May 10 deadline.

Having made that determination, it becomes necessary to discuss appellants' seventh, eighth, ninth and tenth points, the thrust of which is that the trial court erred both in determining that the Commission had subject matter jurisdiction to consider appellee's appeal and that appellants were estopped to deny that jurisdiction.

■ The ten-day filing provision of the statute is mandatory and jurisdictional and must be strictly followed. *City of Temple Firemen's and Policemen's Civil Service Commission v. Bender*, 787 S.W.2d 951, 953 (Tex.1990); *Downs v. City of Fort Worth*, 692 S.W.2d 209, 212 (Tex.App.—Fort Worth 1985, writ ref'd n.r.e.). As appellee did not timely file his notice of appeal, the Commission had no jurisdiction to consider his appeal and the trial court erred in concluding otherwise.

■ Additionally, subject matter jurisdiction is a fundamental stricture upon the powers of a court. Indeed, subject matter jurisdiction, a statutory creation or enactment, is so important and essential that it has long been held it cannot be waived or created by estoppel. *Daniel v. Dallas Independent School Dist.*, 351 S.W.2d 356, 359 (Tex.Civ.App.—El Paso 1961, writ ref'd n.r.e.). Just as a court, the Commission's authority to hear a case is provided by statute, and the application of estoppel principles will not affect its subject matter jurisdiction. *Cf. Pend Oreille Oil & Gas Co. v. Railroad*

*Commission of Texas*, 788 S.W.2d 878 (Tex. App.—Corpus Christi 1990), *rev'd in part on other grounds*, 817 S.W.2d 36 (Tex.1991) (Texas Railroad Commission's subject matter jurisdiction cannot be conferred by estoppel). Therefore, a plea of estoppel cannot be used for the purpose of enabling the Commission to acquire jurisdiction where no jurisdiction in fact exists. *Cf. Hanover Insurance Company v. Holleman*, 372 S.W.2d 554 (Tex.Civ. App.—Dallas 1963, writ ref'd n.r.e.) (estoppel plea does not provide jurisdiction to Industrial Accident Board over a compensation case where no jurisdiction exists).

■ Based upon our determination that the Commission had no jurisdiction over appellee's appeal as a result of the untimely filing of his notice of appeal, we find the trial court erred in finding that the Commission and the City were estopped from denying the timeliness of appellee's appeal, the effect of which would allow jurisdiction where none existed. Appellants' seventh, eighth, tenth and eleventh points are sustained.

In summary, all of appellants' points are sustained with the exception of their twelfth point. That disposition requires us to reverse the judgment of the trial court and render judgment that appellee take nothing by his suit. *See* Tex.R.App.P. 80(b).