*Court of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*


 

# OPINION

No. 04-09-00731-CV

Matthew **COOKE**, President, and Alice Police Officers' Association,
on behalf of similarly situated officers,
Appellants

v.

**CITY OF ALICE**,
Appellee

From the 79th Judicial District Court, Jim Wells County, Texas
Trial Court No. 08-02-46695
Honorable Richard C. Terrell, Judge Presiding

Opinion by:    Phylis J. Speedlin, Justice

Sitting:       Karen Angelini, Justice
               Phylis J. Speedlin, Justice
               Rebecca Simmons, Justice

Delivered and Filed:  September 29, 2010

AFFIRMED

This appeal involves statutory interpretation of sections 143.045 and 143.046 of the Texas Civil Service Act which provide for the accrual of annual vacation and sick leave for police officers and fire fighters.  TEX. LOC. GOV'T CODE ANN. §§ 143.045, 143.046 (West 2008). Specifically, we must determine whether the implementing rules adopted by the City of Alice with respect to police officers' leave accrual violate the statutes.  We hold that the City is not violating the state leave statutes, and therefore affirm the trial court's judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

The City of Alice is a home rule municipality governed by the Texas Civil Service Act, Chapter 143 of the Texas Local Government Code. TEX. LOC. GOV'T CODE ANN. §§ 143.001-.363 (West 2008 & Supp. 2010). Sections 143.045 and 143.046 of the Code govern the accrual and use of sick leave and vacation leave by police officers and fire fighters. With respect to sick leave, section 143.045(a) provides that, "[a] permanent or temporary fire fighter or police officer is allowed sick leave with pay accumulated at the rate of 1¼ full working days for each full month employed in a calendar year, so as to total 15 working days to a person's credit each 12 months." TEX. LOC. GOV'T CODE ANN. § 143.045(a). Section 143.046(a) of the Code provides that, "[e]ach fire fighter or police officer is entitled to earn a minimum of 15 working days' vacation leave with pay in each year." TEX. LOC. GOV'T CODE ANN. § 143.046(a). The City of Alice, through its Civil Service Commission, has enacted rules implementing the statutory scheme for accrual and use of sick and vacation leave by its police officers and fire fighters. The City's rules define a "day" of sick leave or vacation leave accrual for all of its police officers as eight hours. Specifically, the City's rules provide as follows:

> Section 143.045: A "day" of sick leave accrual for Police Officers shall be eight (8) hours. A "day" of sick leave accrual for Fire Fighters working shifts shall be twelve (12) hours, and eight (8) hours for administrative employees. An employee who is absent from work due to illness shall have his or her sick leave bank reduced by the actual number of work hours missed.

> Section 143.046: A "day" of vacation leave accrual for Police Officers shall be eight (8) hours. A "day" of vacation leave accrual for Fire Fighters shall be twelve (12) hours, and eight (8) hours for administrative employees. An employee who is absent from work due to vacation shall have his or her vacation pay reduced by the actual number of work hours missed.

Matthew Cooke, a police officer for the City of Alice, is assigned to work a 10-hour shift four days per week. Some Alice police officers are assigned to work an 8-hour shift five days per week. Both sets of police officers work a total of 40 hours per week, and accrue 120 hours of vacation and sick leave per calendar year. Cooke, on behalf of himself and the Alice Police Officers' Association, sued the City of Alice complaining that the officers working a 10-hour day are treated unfairly because the 120 hours of annual leave means, in reality, they accrue only twelve 10-hour "working days" of sick and vacation leave each year, while the officers working an 8-hour day accrue the statutory fifteen 8-hour "working days" of sick and vacation leave each year. Cooke asserted that he and the other similarly situated officers receive unequal treatment because they must use 10 hours of leave to take off one "working day," while the 8-hour shift officers need only use 8 hours of leave to take off one "working day." By defining a working "day" for all police officers as eight hours, Cooke asserted the City has violated sections 143.045 and 143.046 of the Local Government Code which require the accrual of "15 working days" of sick and vacation leave each year. Cooke only challenged the City's method of accruing leave for the officers, not its method of debiting for leave taken. In his petition for declaratory judgment, Cooke requested that judgment be entered stating the City has violated the Local Government Code, and that he and the similarly situated officers be credited with all vacation and sick leave days accrued pursuant to the law from April 2007 to the present date. The suit proceeded to a bench trial during which the parties stipulated to the relevant evidence. After hearing the legal arguments, the trial court entered judgment in favor of the City of Alice. Cooke now appeals.

**ACCRUAL OF LEAVE FOR POLICE OFFICERS**

On appeal, Cooke contends the trial court's judgment should be reversed because the City of Alice is violating sections 143.045 and 143.046 of the Local Government Code by failing to provide its police officers who work a 10-hour day with the statutorily required "15 working days" of sick and vacation leave per year. Cooke asserts that a "working day" as used in sections 143.045 and 143.046 means the number of hours a particular officer is scheduled to work each day, *i.e.*, his or her 8-hour or 10-hour shift. Cooke concedes that the City is debiting the police officers' leave correctly, *i.e.*, on an hourly basis; his contention is that the City is not accruing leave correctly for its police officers who work a 10-hour shift. The City of Alice responds that its rules implementing the state leave statutes, and defining a work "day" for all police officers as a standard 8-hour day, result in uniformity of leave and do not violate the statutes; both the accrual and usage of leave are calculated on an hourly basis, and all police officers receive the same 120 hours of annual sick and vacation leave. We must determine whether the City's rules interpreting the statutory guidelines and defining a work "day" for all its police officers as a traditional 8-hour day conflicts with the statutory leave requirements.

### *Standard of Review*

A person whose rights are affected by a statute may petition a court to determine a question of construction under the statute, and may request a declaration of his rights under the statute. TEX. CIV. PRAC. & REM. CODE ANN. § 37.002 (West 2008). We review declaratory judgments under the same standards as any other judgment. *Id.* § 37.010 (West 2008). Here, Cooke asserts he was entitled to a judgment declaring that the City of Alice's rules defining a police officer's work "day" as a standard 8-hour day violate the statutory requirement that all

police officers receive fifteen "working days" of annual sick and vacation leave. We begin our analysis by stating the basic principles of statutory construction.

### *Principles of Statutory Construction*

Questions of statutory interpretation are questions of law which we review *de novo*. *City of DeSoto v. White*, 288 S.W.3d 389, 394-95 (Tex. 2009). Under the well settled principles of statutory construction, we begin with the statutory language itself. *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). Our primary goal is to give effect to the Legislature's intent, and we turn first to the plain meaning of the words and terms chosen. *Id.*; *Owens & Minor, Inc. v. Ansell Healthcare Prods, Inc.*, 251 S.W.3d 481, 483 (Tex. 2008) ("[I]t is a fair assumption that the Legislature tries to say what it means, and therefore the words it chooses should be the surest guide to legislative intent."). We presume that every word in a statute was chosen by the Legislature for a purpose. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 628 (Tex. 2008). When a term is not defined in the statute, we give the term its ordinary meaning—within the context of the statute, not in isolation. *Guitar Holding Co., L.P. v. Hudspeth County Underground Water Conservation Dist. No. 1*, 263 S.W.3d 910, 915-16 (Tex. 2008). When the Legislature uses a particular term in one section of a statute and excludes it in another, we must give the term meaning where used and must not imply it where it was excluded. *Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer*, 904 S.W.2d 656, 659 (Tex. 1995); *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981).

If the statutory language is clear and unambiguous, we interpret its words according to their plain and common meaning unless that interpretation would lead to absurd results. *Barshop v. Medina County Underground Water Conservation Dist.*, 925 S.W.2d 618, 629 (Tex. 1996). When a statute's language is unambiguous, it is inappropriate to resort to rules of construction or

extrinsic aids. *City of Rockwall*, 246 S.W.3d at 626; *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865-66 (Tex. 1999). The judiciary's role "is not to second-guess the policy choices that inform our statutes or to weigh the effectiveness of their results; rather, our task is to interpret those statutes in a manner that effectuates the Legislature's intent." *F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 690 (Tex. 2007) (quoting *McIntyre v. Ramirez*, 109 S.W.3d 741, 748 (Tex. 2003)). In ascertaining legislative intent, we consider the plain statutory language in the context of the entire act, as well as the objective of the statute, its history, and the consequences of a particular construction. TEX. GOV'T CODE ANN. § 311.023(1), (3), (5) (West 2005); *City of Rockwall*, 246 S.W.3d at 626 n.6; *Jones v. Fowler*, 969 S.W.2d 429, 432 (Tex. 1998).

***Powers of Home Rule Municipality***

As a home rule municipality, the City of Alice has the power to legislate, limited only by the Texas Constitution, general laws, or its own charter. TEX. CONST. art. XI, § 5; TEX. LOCAL GOV'T CODE ANN. § 51.072 (West 2008); *Lower Colorado River Auth. v. City of San Marcos*, 523 S.W.2d 641, 644 (Tex. 1975); *Glass v. Smith*, 150 Tex. 632, 244 S.W.2d 645, 649 (1951) (legislature may by general law withdraw a particular subject from a home rule city's domain). Merely because the Legislature has enacted a law addressing a certain subject does not, however, mean the entire subject matter is completely preempted. *City of Richardson v. Responsible Dog Owners of Texas*, 794 S.W.2d 17, 19 (Tex. 1990). In particular, when a state statute contains an undefined term, a home rule city is empowered to enact rules and regulations defining the term and implementing the statutory provision. *See City of Sweetwater v. Geron*, 380 S.W.2d 550, 553 (Tex. 1964) (recognizing that cities retain residual control over aspects of civil service employment that are not specifically defined in the Civil Service Act, and that such residual

- 6 -

control must be exercised in good faith and for the betterment of municipal service); *see also Int'l Ass'n of Fire Fighters, Local 1173 v. City of Baytown*, 837 S.W.2d 783, 788 (Tex. App.— Houston [1st Dist.] 1992, pet. denied) (where longevity or seniority pay was not defined in Civil Service Act, Baytown city council acted within its legislative authority by enacting compensation plan abolishing automatic base salary increases based on fire fighters' longevity, and its ordinance did not violate the same base salary requirement of section 143.041 of Civil Service Act). When a home rule city ordinance appears to be in conflict with a state statute, our duty is to reconcile the two "if any fair and reasonable construction of the apparently conflicting enactments exist[s] and if that construction will leave both enactments in effect." *City of Baytown*, 837 S.W.2d at 787 (citing *City of Beaumont v. Fall*, 116 Tex. 314, 291 S.W. 202, 206 (1927)). If it is not possible to reconcile the two enactments, the state statute trumps the city ordinance. *Dallas Merchant's and Concessionaire's Ass'n v. City of Dallas*, 852 S.W.2d 489, 491 (Tex. 1993) (home rule city's ordinance that attempts to regulate subject matter preempted by state statute is unenforceable to extent it conflicts with statute).

Here, neither the Constitution or city charter, nor sections 143.045 and 143.046, expressly preempts the City of Alice's power to regulate and "fill in the gap" left by the statutes by providing a specific method for calculating leave accrual by its police officers. *See City of Sweetwater*, 380 S.W.2d at 552 (acknowledging the broad powers granted to home rule cities may be limited by the Legislature, but stating that "should the Legislature decide to exercise that authority, its intention to do so should appear with unmistakable clarity"); *see also Glass*, 244 S.W.2d at 652 (same). Therefore, we must first determine whether the City's rules conflict with the statutory requirements of sections 143.045 and 143.046, as alleged by Cooke, or merely provide a method for implementing the statutory requirements. If we determine that a conflict

exists, we must then attempt to reconcile the two with a fair and reasonable construction of each enactment so that each remains in effect. *City of Baytown*, 837 S.W.2d at 787. If reconciliation fails, the state statute prevails. *Dallas Merchant's*, 852 S.W.2d at 491. Administrative rules are construed in the same manner as statutes. *Rodriguez v. Service Lloyds Ins. Co.*, 997 S.W.2d 248, 254 (Tex. 1999).

### *Statutory Interpretation of a "Working Day" in Sections 143.045 & 143.046*

In order to determine whether the City's definition of a police officer's work "day" as an 8-hour day conflicts with the statutory requirement of fifteen "working days" of annual leave, we must determine what the Legislature intended the phrase "working day" to mean. As noted, both statutes governing accrual of sick and vacation leave for police officers require the accumulation of "15 working days" of annual leave time. TEX. LOC. GOV'T CODE ANN. §§ 143.045(a), 143.046(a). The term "working day" is not defined in either statute, or anywhere in Chapter 143 of the Local Government Code.[1] Both sides agree that "working day" must be accorded its plain meaning, but differ as to what is the plain meaning of the term within the context of Chapter 143. Cooke asserts that a "working day" means each individual officer's daily shift, while the City contends a "working day" means a traditional 8-hour work day. Both sides rely on *City of Lubbock v. Elkins*, 896 S.W.2d 346 (Tex. App.—Amarillo 1995, no pet.), in which the Amarillo court construed the undefined term "day" as used in section 143.010 of the Code as governing the time period during which a police officer may file an appeal of a disciplinary suspension. *Id.* at 350 (noting that in drafting Chapter 143 the Legislature "clearly recognized the significance of using various terminologies . . . as it utilized the following nomenclature throughout the chapter,

---

[1]  In the briefs, the parties refer to a definition of "working days" in section 143.312(b)(4), but that subsection defines "normally assigned working hours," a different term; moreover, that statute does not apply to municipalities the size of the City of Alice. TEX. LOC. GOV'T ANN. 143.312(b)(4) (West 2008).

*viz*: days, calendar days, working days, and business days"); TEX. LOC. GOV'T CODE ANN. § 143.010 (West 2008). *Elkins* is factually distinguishable and does not resolve the issue before us, but we agree with the methodology employed by the Amarillo court. Acknowledging that Chapter 143 does not define the term "day," the court focused on the term's ordinary meaning within the context of the statute, and also looked to "the purpose intended to be accomplished by the provision within which the term is used and the effect that various interpretations of the term will have when applied to the subject matter." *Elkins*, 896 S.W.2d at 350-51. We will employ the same analysis to construe the undefined term "working day."

### 1. Ordinary Meaning Within Context of Statute

We begin by considering the plain and ordinary meaning of the words chosen—viewed within the context of Chapter 143. *Guitar Holding Co.*, 263 S.W.3d at 915-16. We are also mindful of the fact that the Legislature chose to use the particular terms "working day," "calendar day," "business day," and, simply, "day" in different provisions of Chapter 143, and we must attribute value to that legislative word choice. *Laidlaw*, 904 S.W.2d at 659; *Elkins*, 896 S.W.2d at 350-51.

Turning to the leave provisions at issue in this case, we note that the Legislature set forth a specific method of accruing sick leave on a monthly basis, not a daily basis, *i.e.*, "at the rate of 1¼ full working days for each ***full month*** employed in a calendar year so as to ***total 15 working days*** to a person's credit each 12 months." TEX. LOC. GOV'T CODE ANN. § 143.045(a). Such specificity by the egislature suggests it was not focused on the number of hours any individual officer worked on a particular day, but instead on a uniform method of leave accrual *by month*

for all officers. Indeed, the Alice police officers all work a typical 40-hour work week, regardless of whether their shifts are 8 hours or 10 hours in a day.[2]

We also note that in section 143.046, the vacation leave provision, the Legislature stated in subsection (a) that each officer is entitled to accrue "a ***minimum of 15 working days'*** vacation leave with pay in each year," but when explaining how to compute the usage of vacation leave, the Legislature specified that "only those ***calendar days*** during which the person would be required to work if not on vacation may be counted as vacation days." *Id.* § 143.046(a), (b). This legislative choice to use "working days" for the accumulation of vacation leave and "calendar days" for the usage of vacation leave logically suggests the Legislature was acknowledging the fact that police officers' "working days" are the calendar days on which they are required to work, *i.e.*, a police officer may work on any of the seven days in a week, not just Monday through Friday.

The methods for calculating leave set forth in both statutes, when read according to the ordinary meaning of the language used, suggests the Legislature was not focused on any individual officer's daily work shift, but rather on establishing a uniform system of leave for all police officers.

### 2. *Purpose of the Act*

We next consider the overall purpose and objective of Chapter 143, the Civil Service Act. *City of Rockwall*, 246 S.W.3d at 626 n.6; *Jones*, 969 S.W.2d at 432. The stated purpose of Chapter 143 is "to secure efficient fire and police departments composed of capable personnel who are free from political influence and who have permanent employment tenure as public

---

[2] Cooke relies on an unpublished case in which the Austin Court of Appeals held that City of Austin fire fighters who worked varying daily shifts were entitled to accrue leave according to the hours worked. *See City of Austin v. Int'l Assoc. of Fire Fighters, Local 975*, No. 03-89-00255-CV (Tex. App.—Austin 1990, no writ) (not designated for publication). That case is distinguishable because the Austin fire fighters did not all work the same number of hours each year as the Alice police officers do in this case.

servants." TEX. LOC. GOV'T CODE ANN. § 143.001(a) (West 2008); *City of DeSoto*, 288 S.W.3d at 398. Chapter 143 further provides that police officers and fire fighters of the same rank are entitled to receive the same base salary, *i.e.*, be compensated equally, except for other types of special pay like longevity pay. *See* TEX. LOC. GOV'T CODE ANN. §143.041(b),(c) (West 2008); *City of Harlingen v. Avila*, 942 S.W.2d 49, 53 (Tex. App.— Corpus Christi 1997, writ denied) (legislative intent of section 143.041 is to require equal and fair pay). Section 143.045 treats sick leave as a form of compensation, providing that when an officer leaves employment he or she is entitled to a lump-sum payment for accumulated sick leave. TEX. LOC. GOV'T CODE ANN. § 143.045(c). Toward Chapter 143's purpose of fair and equal treatment, both leave provisions provide that *all* police officers shall earn the same amount of sick leave and vacation leave each year, to wit: 15 "working days." *Id.* at §§ 143.045(a), 143.046(a). Reading the statutory leave provisions in view of the overall purpose of Chapter 143, it is clear the Legislature intended to establish a uniform, equal system of leave accrual for all police officers.

### 3. Consequences of Particular Interpretations

Finally, we consider the consequences of the parties' proposed interpretations of a "working day." *City of Rockwall*, 246 S.W.3d at 626 n.6; *Jones*, 969 S.W.2d at 432. The City asserts its definition of a "working day" as a traditional 8-hour day is a reasonable and ordinary understanding of the term, and is consistent with the statutory mandate of equal treatment apparent in the leave statutes and the Act as a whole; the City's interpretation results in the same 120 hours of annual leave being credited to each officer, without regard to daily shifts. On the other hand, Cooke's contention that, in order to comply with the statutory requirement of "15 working days," the officers who work 10-hour shifts must be credited with fifteen 10-hour "working days," which results in total annual leave of 150 hours for those officers, while the

officers who work 8-hour shifts receive only 120 hours—resulting in unequal treatment among the officers. Rather than demanding equal treatment, Cooke concedes that he is indeed asking for 30 more leave hours per year for the officers who work their forty hours per week in four 10-hour shifts. This is an unequal result which the Legislature could not have intended given the overall purpose of Chapter 143. *See Barshop*, 925 S.W.2d at 629. The consequence of Cooke's interpretation of "working day" to mean each particular officer's daily shift not only undermines the stated purpose of Chapter 143 to ensure fair and equal treatment among all police officers, but conflicts with the statutory leave provisions' clear intent to provide all officers with the same amount of annual leave.

### *Conclusion*

We conclude the City's rules defining a work "day" as a traditional 8-hour day for purposes of leave accrual for all its police officers do not conflict with, or violate, the language of the state leave statutes or the overall purpose of Chapter 143. Because the term "working day" used in sections 143.045(a) and 143.046(a) was not defined by the Legislature, the City of Alice is empowered to enact rules implementing the leave statutes and setting forth a basis to calculate leave accrual that applies to all police officers, and results in the accrual of equal amounts of annual hourly leave. *See City of Sweetwater*, 380 S.W.2d at 553; *see also City of Baytown*, 837 S.W.2d at 788. Accordingly, we overrule Cooke's issue on appeal.

### ATTORNEY'S FEES

Finally, Cooke argues the trial court abused its discretion in denying his request for attorney's fees under the Declaratory Judgment Act. TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (West 2008) (providing trial court may award costs and reasonable and necessary attorney's fees "as are equitable and just"); *Tex. Educ. Agency v. Leeper*, 893 S.W.2d 432, 446

(Tex. 1994) (attorney's fees may be awarded against governmental entities under DJA). While we recognize that the court may, in its discretion, award attorney's fees to a party seeking declaratory relief even though the party does not prevail, we cannot say the court abused its discretion by declining to award Cooke his attorney's fees. *See Barshop*, 925 S.W.2d at 637. Cooke asserts his recovery of attorney's fees was justified because the facts are undisputed and the clear language of the statute supports his claim of entitlement to increased vacation and sick leave accrual. As discussed, *supra*, we disagree that the plain language of the governing statutes supports Cooke's position. Moreover, Cooke has failed to establish that the trial court abused its discretion by ruling arbitrarily, unreasonably, or without regard to guiding legal principles. *See Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998). Accordingly, we decline to hold the trial court abused its discretion by denying Cooke's request for attorney's fees.

## CONCLUSION

Based on the foregoing analysis, we overrule Cooke's issues on appeal and affirm the trial court's judgment.

Phylis J. Speedlin, Justice