NUMBER 13-04-573-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


RUTH C. THOMAS AND

JOHN W. THOMAS D/B/A

TRAMITES MIGRATORIOS, Appellants,


v.



THE STATE OF TEXAS, Appellee.

 


On appeal from the 389th District Court of Hidalgo County, Texas.


 


O P I N I O N



Before Justices Hinojosa (1), Yañez, and Rodriguez


Opinion by Justice Yañez


 

 Appellee, the State of Texas, acting through the Consumer Protection Division of
the Attorney General's Office, sued appellants, Ruth C. Thomas and John W. Thomas,
d/b/a Tramites Migratorios, for violations of the Notary Public Act ("NPA") (2) and the
Deceptive Trade Practices Act ("DTPA"). (3) Specifically, the State alleged that by offering
immigration services through their business (Tramites Migratorios) to persons who
purchased their services, appellants engaged in the unauthorized practice of law. 
Following a jury trial, the jury (1) found each appellant had acquired $469,416.50 by means
of engaging in an unlawful act or practice; (2) assessed penalties in the amount of
$20,000.00 as to each appellant, and (3) awarded attorneys' fees to the State in the
amount of $22,000.00 as to each appellant. The trial court rendered judgment in the
State's favor, ordered permanent injunctive relief as to each appellant, and ordered
restitution, penalties, and attorneys' fees as awarded by the jury. By four issues,
appellants contend (1) the trial court erred in admitting evidence of prior misconduct by Ms. 
Thomas, (2) there is no evidence to support the jury's findings that each appellant acquired
$469,416.50 by unlawful means, (3) the trial court erred in ordering restitution without
specifically identifying the persons to whom monies were to be paid or the amount due to
each recipient, and (4) the court erred in ordering restitution in an amount that includes
monies paid earlier than two years prior to the filing of the filing of the State's suit. We
affirm. 


Standard of Review and Applicable Law


 We address legal-sufficiency challenges as either "no-evidence" or "matter-of-law"
issues. (4) We analyze the issue as a "no-evidence" challenge when, as here, the party
complaining on appeal did not bear the burden of proof at trial. (5)

 In deciding a no-evidence challenge, we determine whether there is evidence that
would enable reasonable and fair-minded people to reach the verdict under review. (6) In
doing so, we view all the evidence in the light favorable to the verdict, crediting favorable
evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable
jurors could not. (7) We will sustain a legal sufficiency point if the record reveals the
following: (a) the complete absence of a vital fact; (b) the court is barred by rules of law
or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the
evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence
establishes conclusively the opposite of the vital fact. (8) The fact finder is the sole judge of
the credibility of the witnesses and the weight to give their testimony. (9) 

 The admission and exclusion of evidence is committed to the trial court's sound
discretion. (10) We must uphold the trial court's evidentiary ruling if there is any legitimate
basis for the ruling. (11) We will not reverse a trial court for an erroneous evidentiary ruling
unless the error probably caused the rendition of an improper judgment. (12) When
erroneously admitted evidence is merely cumulative or does not concern a material issue
dispositive of the case, the error is harmless. (13) We review the entire record, and require
the complaining party to demonstrate that the judgment turns on the particular evidence
admitted. (14) Whether erroneous admission is harmful is more a matter of judgment than
precise measurement. (15) In making that judgment, a reviewing court may consider the
efforts made by counsel to emphasize the erroneous evidence and whether there was
contrary evidence that the improperly admitted evidence was calculated to overcome. (16) 
A trial court abuses its discretion when it acts without regard for any guiding rules or
principles. (17)

 Texas Rule of Evidence 404(b) provides, in pertinent part:

Evidence of other crimes, wrongs or acts is not admissible to prove the
character of a person in order to show action in conformity therewith. It may,
however, be admissible for other purposes, such as proof of motive,
opportunity, intent, preparation, plan, knowledge, identity, or absence of
mistake or accident . . ." (18)


 "Other acts" evidence is thus admissible to show a plan or scheme. (19) If extraneous
offense evidence is improperly admitted during the State's case-in-chief, any error may be
cured by the defendant's subsequent testimony which "opens the door" to rebuttal. (20)

Analysis 


 By their first issue, appellants contend the trial court erred in admitting evidence of
prior misconduct by Ms. Thomas. Specifically, appellants complain of the trial court's
admission of Exhibit 14, a letter dated October 14, 1993, from the Executive Director of
Shiloh Center for Human Development, Inc. to Ms. Thomas. (21) Ms. Thomas testified that
she worked at the Shiloh Center, "an assistance center for immigrants" located in Ohio, for
several years in the early 1990's, until 1993. The October 14 letter advises Ms. Thomas
that she is responsible for "illegal and unauthorized" expenditures, "which constitute theft
of client funds." The letter seeks restitution of "funds owed to clients and Shiloh Center"
in the amount of $8,864.75. Appellants' counsel objected to the admission of the letter on
hearsay grounds; the State argued it was admissible as "evidence of other wrongs to show
scheme." The court admitted the letter.

 Appellants argue that the trial court erred in admitting the letter because it did not
establish acts Ms. Thomas took in preparation for the charged offense, but instead, merely
showed that she had engaged in prior acts similar to the charged offense. Thus,
appellants argue, the letter was "pure propensity evidence" prohibited by rule 404(b). 

 The State argues that the trial court acted within its discretion in admitting the letter
to show that Ms. Thomas had a plan and motive to open her own immigration consulting
business where she would continue to profit from immigrants without supervision. The
State also argues that appellants "opened the door" to the October 14 letter by eliciting
testimony from Ms. Thomas on direct examination that she obtained her experience in
filling out immigration forms from her employment at the Shiloh Center. The State further
argues that even if the trial court abused its discretion in admitting the letter, appellants
have not shown that the error, if any, caused the rendition of an improper judgment 
because there is an abundance of undisputed evidence to independently support the jury's
findings as to the violations of the NPA and the DTPA.

 During the defense case-in-chief, defense counsel asked Ms. Thomas, "[d]id you
run a scam, Ms. Thomas?" and "[d]id you try to rip people off?" Ms. Thomas replied "no,"
that she wanted to have a good business, and that "this is what hurts [her] from these
accusations." 

 We agree with the State that assuming, without deciding, that the October 14 letter
was inadmissible "propensity evidence" under rule 404(b), appellants have not shown that
the judgment turned on admission of the letter. (22) As discussed below, Ms. Thomas
testified, with regard to the charged offenses, that she (1) interviewed clients to determine
if they were eligible for immigration benefits, (2) advised clients as to whether to file an
application for benefits, (3) decided which immigration category a client should apply under
and filled out the applicable forms, (4) charged clients a fee each time documents were
drafted, (5) was a notary at the time she accepted money from clients for providing
immigration services, (6) notarized Mr. Thomas's signature on documents even though she
was not present when he signed the documents, and (7) notarized her own signature. In
addition, Claudia Beltran testified that she paid Ms. Thomas $850.00 in cash in exchange
for immigration services, including the filing of an application for permanent residency. 
Marco Cubas testified that he paid Ms. Thomas approximately $1,800.00 in exchange for
her services in preparing an application for residency. Mr. Cubas testified that Ms. Thomas
represented to him that she was an immigration attorney. He also testified that Ms.
Thomas advised him to ignore several notices regarding his failure to appear at an
immigration hearing in Houston and that he should ignore the deportation notice he had
received. 

 During closing argument, the State briefly referred to the October 14 letter twice:

[Prosecutor]: Ms. Thomas came across with the scheme, this plan, this
blueprint of how to make a lot of money at Shiloh Community Center with
immigrants. And she found out that they were the perfect victims. . . . They
are the perfect victims. And she discovered that at Shiloh because she
made money from the immigrants that they were requiring for her to pay it
back. Look at the exhibit. They held her accountable. They wanted her to
pay it back. 


. . . .


[The evidence] is overwhelming. Make [the defendants] accountable. Shiloh
made them accountable. And this is the process, ladies and gentlemen, how
we bring people here to court, to hold them accountable for their behavior. 


 We conclude that the State presented abundant evidence and testimony (including
the defendants' testimony) regarding the charged offense. After reviewing the entire
record, we conclude that appellants have not shown that the judgment turned on the
admission of the October 14 letter. (23) We conclude the trial court did not abuse its
discretion in admitting the letter. Appellants' first issue is overruled.

 By their second issue, appellants contend there is "no evidence" to support the
jury's finding that each appellant acquired $469,416.50 by means of an unlawful act or
practice (Question No. 6). Appellants contend that the trial court erred in admitting the
only exhibits introduced to support the jury's finding to Question No. 6--Exhibits 5, 10, and
12--because they are hearsay. Thus, appellants argue, without the erroneously-admitted
exhibits, no evidence exists to support the jury's finding. 

 Exhibit 5 is four receipt books seized from appellants' business, Tramites
Migratorios. Exhibit 10 is a computer printout of electronic files seized from the computer
at appellants' business. Exhibit 12 is a one-page hand-written calculation summarizing
information from Exhibits 5 and 10. The State acknowledges that Exhibits 5, 10, and 12
are the only evidence of payments made to appellants by customers. The State
requested that the jury order restitution of half the amount paid to appellants from
December 2000 to February 2004 (as reflected in the exhibits) from each appellant; the
jury's answer to Question 6 and the judgment complies with the State's request. 

 The State presented the testimony of Juan Ramirez, a compliance specialist with
the Attorney General's office. Ramirez testified that Exhibit 5, the receipt books, reflected 
payments from clients to appellants' business totaling $138,729.00 from the period of April
2003 to February 2004. He also testified that Exhibit 10 reflected payments from clients
to appellants' business totaling $800,084.00 for the period December 2000 through March
2003. Exhibit 12 shows that the total of the amounts shown in Exhibits 5 and 10 is
$938,833.00, reflecting monies paid to appellants' business between December 2000
through February 2004.

 Appellants argue that the exhibits are hearsay and that the State did not establish
an exception to the hearsay rule. The State argues the trial court did not err in admitting
the exhibits because they are business records. We agree.

 A threshold question is whether appellants preserved their hearsay complaint with
regard to Exhibit 10. To preserve a complaint, a party must make a timely and specific
objection that is followed by an adverse ruling. (24) Even though an objection to evidence
is properly made, prior or subsequent presentation of essentially the same evidence
without objection waives error. (25) In addition, an objection made at trial must mirror the
contention on appeal or the point of error will be waived. (26) Here, appellants' counsel
initially objected to Exhibit 10 on the basis of hearsay, and the trial court sustained the
objection. However, Exhibit 10 was subsequently offered by the State, and appellants'
counsel objected only that the information was "not relevant" and "unfairly prejudicial." We
conclude that because appellants failed to assert a hearsay objection to Exhibit 10 the
second time it was offered, and because their hearsay objection on appeal does not
comport with their objection at trial, appellants have failed to preserve any error regarding
the admission of Exhibit 10. 

 The predicate for the introduction of a record under the business records exception,
Texas Rule of Evidence 803(6), requires proof (1) that the record was made by or from
information transmitted by a person with personal knowledge of the events or conditions
recorded, (2) that the record was made at or near the time of the events or conditions
recorded, and (3) that it was in the ordinary course of the reporting entity's business to
make and keep such records. (27) In reviewing the trial court's ruling, an appellate court's
task is only to determine whether there was a sufficient evidentiary basis for the court's
determination. (28) 

 Here, Ms. Thomas testified that the receipt books (Exhibit 5) were kept in the
regular course of business and reflected the record of payments made by clients for
immigration services. Ms. Thomas testified that she checked the receipts and accounted
for the monies received at the end of each business day. She also testified that when
time allowed, information regarding amounts paid by clients was entered into the
computer. We conclude there was a sufficient evidentiary basis for the trial court's
admission of Exhibit 5. Because the trial court properly admitted Exhibit 5 and appellants
failed to preserve any error regarding the admission of Exhibit 10, we hold that the
evidence is legally sufficient to support the jury's finding that each appellant acquired
$469,416.50 by means of an unlawful act or practice. We overrule appellants' second
issue. (29)

 In their third issue, appellants contend the trial court erred in rendering a judgment
that violates section 17.47(d) of the DTPA because it ordered restitution to "consumers"
without specifying the identifiable persons entitled to the restitution and the amount of
money to be paid to each identified person. In their fourth issue, appellants contend the
judgment violates section 17.47(d) because it ordered restitution in an amount that
includes monies paid to appellants beyond a point two years prior to the filing of the
lawsuit. Because both issues challenge the judgment as violating section 17.47(d) of the
DTPA, we address them together. 

 Whether a particular remedy is available under a statute is a question of law for the
court. (30) We review questions of statutory interpretation de novo. (31) In construing a statute,
our objective is to determine and give effect to the legislature's intent. (32) If the statutory
text is unambiguous, we "must adopt the interpretation supported by the statute's plain
language unless that interpretation would lead to absurd results." (33) Legislative intent is
derived from the entire act, not just its isolated portions. (34)

 The State asserts that "[t]he boundaries of statutory authority, with respect to an
award of restitution under section 17.47(d) of the DTPA is an issue of first impression, and
its determination rests on principles of statutory construction." 

 Section 17.47(d) of the DTPA provides:

(d) The court may make such additional orders or judgments as are
necessary to compensate identifiable persons for actual damages or to
restore money or property, real or personal, which may have been acquired
by means of any unlawful act or practice. Damages may not include any
damages incurred beyond a point two years prior to the institution of the
action by the consumer protection division. Orders of the court may also
include the appointment of a receiver or a sequestration of assets if a person
who has been ordered by a court to make restitution under this section has
failed to do so within three months after the order to make restitution has
become final and nonappealable. (35) 


The trial court's judgment provided, in pertinent part:

6. IT IS FURTHER ORDERED by the Court that Plaintiff STATE OF TEXAS
have and recover from Defendant RUTH C. THOMAS the sum of
$511,416.50 comprised of the following amounts:


 a. The amount of $469,416.50 as restitution to consumers of money
acquired by means of false, misleading, or deceptive acts or practices of
Defendant RUTH C. THOMAS;


. . .



7. IT IS FURTHER ORDERED by the Court that Plaintiff STATE OF TEXAS
have and recover from Defendant JOHN W. THOMAS the sum of
$511,416.50 comprised of the following amounts:


 a. The amount of $469,416.50 as restitution to consumers of money
acquired by means of false, misleading, or deceptive acts or practices of
Defendant JOHN W. THOMAS; 


. . .



8. IT IS FURTHER ORDERED by the Court that Defendants shall make
restitution to consumers as provided in this Final Judgment, through the
Consumer Protection and Public Health Division of the Office of the Texas
Attorney General, in order to restore money acquired by means of
Defendants' unlawful acts or practices. With respect to amounts of
restitution that the STATE OF TEXAS may collect from Defendants, it is
hereby ordered that the review, determination and allocations of amounts of
money to be restored to consumers shall be within the sole discretion of the
Consumer Protection and Public Health Division.


 Appellants argue that section 17.47(d) requires the trial court to specify (1)
identifiable persons to whom money is to be restored and (2) the amount of money to be
paid to each identifiable person. Appellants argue that because section 17.47(d) does not
expressly authorize the trial court to order the consumer protection division to determine
how much money is paid to whom, the trial court lacked authority to do so and the
judgment is "voidable." The State argues that section 17.47(d) provides trial courts with 
two separate alternatives: they may make orders or judgments to (1) compensate
identifiable persons for actual damages or (2) restore money acquired by unlawful means. 
Thus, the "identifiable persons" language applies only to the first alternative, when trial
courts award actual damages.

 We agree with the State. Actions filed by the attorney general under section 17.47
of the DTPA qualify as de facto class actions. (36) Here, the members of the class
(consumers whose money was acquired by an unlawful act or practice) may be identified
by examining the receipt books and computer printout from appellants' business. We
conclude that the plain language of section 17.47(d) authorizes the trial court to order the
restoration of money or property acquired by unlawful means, without any requirement that
the trial court specify "identifiable persons" or the amount of money to be paid to each
consumer. (37) 

 Appellants also contend that the judgment violated section17.47(d) because it
ordered restitution in an amount that includes money paid to appellants more than two
years prior to the institution of the State's lawsuit. The State's lawsuit was filed on
February 9, 2004. Appellants argue that the language of section 17.47(d) that "[d]amages
may not include any damages incurred beyond a point two years prior to the institution of
the action by the consumer protection division" means that the trial court was not
authorized to restore monies paid by consumers any time before February 9, 2002. 
According to appellants, because Exhibit 10 included monies paid by consumers between
December 2000 and March 2003, the judgment improperly ordered restitution of monies
paid beyond the two-year period prior to institution of the suit. 

 The State asserts that the question of whether, as it contends, the two-year
limitation in section 17.47(d) applies only to actual damages, and not to restitution, is also
an issue of first impression. (38) The State argues that because the second alternative
available in section 17.47(d)--restoration of money or property--is separate from the first
alternative (compensating identifiable persons for actual damages), the two-year limitations
period applies only to the award of actual damages, and not to restitution. Again, we agree
with the State's interpretation. 

 Appellants argue that the term "damages," as used in section 17.47(d), includes
restitution. In support, appellants cite Denver Indep. Sch. Dist. v. Moses, 51 S.W.3d 386,
391 (Tex. App.-Amarillo 2001, no writ), and Schein v. Stromboe, 102 S.W.3d 675 (Tex.
2002). 

 In Schein, the supreme court notes that the class-action plaintiffs "claim a number
of different type of damages." (39) After a brief reference to the plaintiffs' claims for
restitution, the court refers to the plaintiffs' "other damage claims." (40) Appellants argue that
this language establishes "clearly" that "damages include restitution." We are unpersuaded
that this language establishes that "restitution" and "damages" are indistinguishable in
every context.

 In Denver Indep. Sch. Dist., the Amarillo Court of Appeals stated that "[a]ward of
restitution is an award of 'damages.'" (41) In Hanners v. State Bar of Texas, 860 S.W.2d 903,
910 (Tex. App.-Dallas 1993, no writ), the Dallas Court of Appeals stated:

Although case law on this issue is scant, the supreme court has previously
referred to a "suit for damages in the nature of restitution." See Smith v.
National Resort Communities, Inc., 585 S.W.2d 655, 660 (Tex. 1979); see
also City of Harker Heights v. Sun Meadows Land, Ltd., 830 S.W.2d 313,
317 (Tex. App.-Austin 1992, no writ) (referring to restitution as a "measure
of damages"). A pre-Smith opinion from this Court, however, attempts to
distinguish between restitution and damages. See Coon v. Schoeneman,
476 S.W.2d 439, 441 (Tex. Civ. App.-Dallas 1972, writ ref'd n.r.e.). Although
the Smith opinion does not expressly overrule Coon on this point, we
conclude that it implicitly overruled this Court's distinction between damages
and restitution. We hold, therefore, that a restitution award is a damage
award.


 We disagree with the Hanners court's interpretation of the supreme court's language
in Smith. The cited passage in Smith states:

Accordingly, we hold that the Smiths established their right to judgment
rescinding their contract with NRC for the purchase of the lot in question. As
previously noted, the trial court rendered a take-nothing judgment against the
Smiths in their suit for rescission and this rendered unnecessary a
determination of the suit for damages in the nature of restitution. Rescission
is an equitable remedy and, as a general rule, the measure of damage is the
return of the consideration paid, together with such further special damage
or expense as may have been reasonably incurred by the party wronged on
account of the contract. See also Atkins v. Beasley, 544 S.W.2d 505 (Tex.
Civ. App.1976, no writ) and cases there cited stating the principle that if
damages as well as rescission are essential to accomplish full justice, they
will both be allowed. (42)


We decline to rely on Smith as authority for the proposition that "damages" encompasses
"restitution" in every context. 

 The State argues that section 17.47(d)'s distinction between compensation for
actual damages and restoration of money and property in actions by the State mirrors the
remedies available in private actions by consumers. (43) Section 17.50(b)(1) provides for the
recovery of "economic damages" by a prevailing consumer; section 17.50(b)(3) provides
for the restoration of money or property acquired in violation of the statute. (44)

 Actual damages for misrepresentation under the DTPA are those recoverable at
common law. (45) Under the DTPA, a plaintiff's damages can be measured in one of two
ways: "(1) the 'out of pocket' measure, which is the 'difference between the value of that
which was parted with and the value of that which was received'; and (2) the 'benefit of the
bargain' measure, which is the difference between the value as represented and the value
actually received." (46) In addition, section 17.50(b)(3) authorizes the equitable remedy of
rescission and restitution, pursuant to which a consumer may recover all consideration paid
for the defective product. (47) 

 A cardinal rule of statutory construction is that every word used must be presumed
to have been used for a purpose. (48) It is also presumed that words excluded were left out
for a purpose. (49) 

 Here, the first sentence of section 17.47(d) provides that a court may make orders
for actual damages or for restoration of money or property. (50) The second sentence of the
section establishes a two-year limitation applicable to "damages," but is silent as to
restoration of money or property. (51) We conclude that the two-year limitation in section
17.47(d) applies only to damages, not restitution. (52) 

 In addition, we note that the primary purpose of a statute of limitations--ensuring
that a defendant is placed on notice of claims within a reasonable time, when evidence and
witnesses are available--is served when, as in the present case, the attorney general
brings a de facto class action. (53) Here, the filing of the suit placed appellants on notice, not
only of the specific claims being asserted, but also of the number of potential consumers
who may ultimately participate in the final judgment. (54)

 Moreover, "the State in its sovereign capacity, unlike ordinary litigants, is not subject
to the defenses of limitations, laches, or estoppel." (55) The rationale behind the
inapplicability of the doctrine is to allow governmental entities to enforce statutes intended
protect the general public. (56) 

 We hold that the trial court's judgment, which ordered restitution of monies acquired
by appellants more than two years prior to the filing of the State's lawsuit, did not violate
section 17.47(d). We overrule appellants' third and fourth issues. 

 We AFFIRM the trial court's judgment. 



 

 LINDA REYNA YAÑEZ,

 Justice





Opinion delivered and filed this the

17th day of May, 2007.
1. The Honorable Federico G. Hinojosa, former Justice of this Court, did not participate in this opinion
because his term of office expired December 31, 2006. See Tex. R. App. P. 41.1(c).
2. See Tex. Gov't Code Ann. § 406.016 (Vernon 1998).
3. See Tex. Bus. & Com. Code Ann. § 17.47 (Vernon Supp. 2006).
4. Gooch v. Am. Sling Co., 902 S.W.2d 181, 183-84 (Tex. App--Fort Worth 1995, no writ). 
5. Id. 
6. City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005). 
7. Id. 
8. Johnson v. McClintock, 202 S.W.3d 821, 822 (Tex. App.--Corpus Christi 2006, no pet.) (citing
Keller, 168 S.W.3d at 810).
9. Id. (citing Keller, 168 S.W.3d at 819). 
10. City of Brownsville v. Alvarado, 897 S.W.2d 750, 753 (Tex. 1995); Oyster Creek Fin. Corp. v.
Richwood Invs. II, Inc., 176 S.W.3d 307, 315 (Tex. App.-Houston [1st Dist.] 2004, pet. denied); Moore v.
Bank Midwest, N.A., 39 S.W.3d 395, 401 (Tex. App.-Houston [1st Dist.] 2001, pet. denied). 
11. Drilex System v. Flores, 1 S.W.3d 112, 119 (Tex. 1998) (citing Owens-Corning Fiberglas Corp. v.
Malone, 972 S.W.2d 35, 43, 41 (Tex. 1998)). 
12. See Tex. R. App. P. 44.1; City of Brownsville, 897 S.W.2d at 753; Malone, 972 S.W.2d at 43;
13. Gonzalez v. Stevenson, 791 S.W.2d 250, 253 (Tex. App.-Corpus Christi 1990, no writ). 
14. Nissan Motor Co. v. Armstrong, 145 S.W.3d 131, 144 (Tex. 2004). 
15. Id. 
16. Id. 
17. City of Brownsville, 897 S.W.2d at 754.
18. Tex. R. Evid. 404(b).
19. Allstate Tex. Lloyds v. Potter, 30 S.W.3d 658, 660 (Tex. App.-Texarkana 2000, no pet.); Johnson
v. J. Hiram Moore, Ltd., 763 S.W.2d 496, 500 (Tex. App.-Austin 1988, writ denied); Payne v. Hartford Fire
Ins., 409 S.W.2d 591, 594 (Tex. Civ. App.-Beaumont 1966, writ ref'd n.r.e.). 
20. Daggett v. State, 187 S.W.3d 444, 454 (Tex. Crim. App. 2005) (citing Siquieros v. State, 685
S.W.2d 68, 71 (Tex. Crim. App. 1985) ("where an extraneous offense may have been improperly admitted
in the State's case-in-chief, subsequently admitted evidence can render the error harmless.")).
21. The letter is addressed to "Ruth Resendez;." Ms. Thomas testified that her name was "Ruth
Resendez" in 1993. 
22. See Armstrong, 145 S.W.3d at 144. 
23. See id. We also note that although appellants assert that the trial court committed "reversible error"
in admitting the letter, they provide no argument or authority addressing how admitting the letter probably
caused the rendition of an improper judgment. 
24. Tex. R. App. P. 33.1.
25. Sauceda v. Kerlin, 164 S.W.3d 892, 919 (Tex. App.-Corpus Christi 2005, pet. granted, judgm't
vacated w.r.m.).
26. See Santellan v. State, 939 S.W.2d 155, 171 (Tex. Crim. App. 1997); Doyle v. State, 24 S.W.3d
598, 602 (Tex. App.-Corpus Christi 2000, pet. ref'd). 
27. Perry v. State, 957 S.W.2d 894, 899 (Tex. App.-Texarkana 1997, pet. ref'd); Clark v. Walker-Kurth
Lumber Co., 689 S.W.2d 275, 281 (Tex. App.--Houston [1st Dist.] 1985, writ ref'd n.r.e); see also Tex. R. Evid.
803(6). 
28. Walker-Kurth Lumber Co., 689 S.W.2d at 281. 
29. We note that as a sub-issue to their second issue, appellants also argue that the evidence is legally
insufficient because Exhibit 10 includes payments made by clients during a time period (from December 2000
to February 9, 2002) barred by the two-year limitations period set forth in section 17.47 of the DTPA. We have
already determined that appellants failed to preserve any issue regarding the admission of Exhibit 10. We
also discuss appellants' "limitations" argument as it relates to their fourth issue. 
30. Wal-Mart Stores, Inc. v. McKenzie, 997 S.W.2d 278, 280 (Tex. 1999) (citing Johnson v. City of Fort
Worth, 774 S.W.2d 653, 656 (Tex. 1989) (statutory construction is a question of law)). 
31. Bragg v. Edwards Aquifer Auth., 71 S.W.3d 729, 734 (Tex. 2002); Edwards Aquifer Auth. v. Chem.
Lime, Ltd., 212 S.W.3d 683, 697 (Tex. App.-Austin 2006, pet. filed). 
32. Edwards Aquifer Auth., 212 S.W.3d at 697 (citing Tex. Dep't of Protective & Regulatory Servs. v.
Mega Child Care, Inc., 145 S.W.3d 170, 176 (Tex. 2004)). 
33. Id. (quoting Mega Child Care, Inc., 145 S.W.3d at 177).
34. Id. (citing City of San Antonio v. City of Boerne, 111 S.W.3d 22, 25 (Tex. 2003)).
35. Tex. Bus. & Com. Code Ann. § 17.47(d) (Vernon Supp. 2006). Section 17.47 provides that the
consumer protection division may initiate proceedings to enjoin unlawful acts or practices pursuant to the
DTPA. See id. § 17.47. Here, the State's petition alleged that appellants violated the DTPA by engaging in
the unauthorized practice of law and violated the Notary Public Act. See Tex. Gov't Code Ann. § 406.016
(Vernon 1998). Section 406.016(d) provides that "[a] notary public not licensed to practice law in this state
may not give legal advice or accept fees for legal advice." See id. § 406.016(d). Section 406.017(d) provides
that a violation of the section is a deceptive trade practice actionable under the DTPA. See id. § 406.017(d). 
In its petition, the State requested, among other relief, that the court order appellants "to restore all money or
other property taken from identifiable persons by means of unlawful acts or practices, or in the alternative
award judgment for damages to compensate for such losses" and that the court order "disgorgement of all
monies taken by [appellants] as a result of their unauthorized practice of law." 
36. See Bara v. Major Funding Corp., 876 S.W.2d 469, 472-73 (Tex. App.-Austin 1994, writ denied). 
37. We also note that the judgment ordered funds held in appellants' names in four accounts at two
banks transferred by cashier's check to the Consumer Protection Division of the AG's office; the judgment
does not identify, however, the sums in the accounts. 
38. The State notes that we are asked to rule on a question that went unanswered in Miller v. State,
No. 14-02-884-CV, 2003 Tex. App. LEXIS 9771, at *6 n.4 (Tex. App.-Houston [14th Dist.] Nov. 18, 2003, no
pet.) (mem. op.). The Miller court did not address appellant's argument that claims against him were barred
by the statute of limitations in section 17.47(d) because it was waived. See id. at *5, *6 n.4. The Miller court
noted:


The State apparently presented the trial court with authority for the proposition that the statute
of limitations in section 17.47 applies only to actual damages, not restitution. See Tex. Bus.
& Com. Code Ann. § 17.47(d). Because the question of whether the statute of limitation[s]
applies is not properly before this court, we do not rule on it. 


Id. 
39. Schein v. Stromboe, 102 S.W.3d 675, 694 (Tex. 2002). 
40. See id. (emphasis added). 
41. Denver Indep. Sch. Dist. v. Moses, 51 S.W.3d 386, 391 (Tex. App.-Amarillo 2001, no writ) (citing
Hanners v. State Bar of Texas, 860 S.W.2d 903, 910 (Tex. App.-Dallas 1993, no writ)). 
42. Smith v. Nat'l Resort Communities, Inc., 585 S.W.2d 655, 659-60 (Tex. 1979) (some citations
omitted). 
43. Section 17.47 of the DTPA applies to actions by the State. See Tex. Bus. & Com. Code Ann. §
17.47(a) (Vernon Supp. 2006) ("Whenever the consumer protection division has reason to believe that any
person is engaging in . . . any act or practice declared to be unlawful by this subchapter, . . ."). In contrast,
section 17.50 provides for a private action by a consumer. See Tex. Bus. & Com. Code Ann. § 17.50(a)
(Vernon Supp. 2006) ("A consumer may maintain an action . . ."). 
44. See id. § 17.50(b)(1), (b)(3) (Vernon Supp. 2006). 
45. W. O. Bankston Nissan, Inc. v. Walters, 754 S.W.2d 127, 128 (Tex. 1988); Matheus v. Sasser, 164
S.W.3d 453, 458 (Tex. App.-Fort Worth 2005, no pet.) (citing Arthur Andersen & Co. v. Perry Equip. Corp.,
945 S.W.2d 812, 816 (Tex. 1997)); Valley Nissan, Inc. v. Davila, 133 S.W.3d 702, 713 (Tex. App.-Corpus
Christi 2003, no pet.). The DTPA currently provides that a prevailing plaintiff may recover "economic
damages." Tex. Bus. & Com. Code Ann. § 17.50(b)(1) (Vernon Supp. 2006). Before 1995, the statute
provided for the recovery of "actual damages." See Act of May 29, 1989, 71st Leg., R.S., ch. 380, § 2, 1989
Tex. Gen. Laws 1490, 1491 (amended 1995). Although the statutory language has changed, Texas courts
continue to treat the term "economic damages" as synonymous with "actual damages." See, e.g., Dal-Chrome
Co. v. Brenntag Southwest, Inc., 183 S.W.3d 133, 143-44 (Tex. App.-Dallas 2006, no pet.); Matheus, 164
S.W.3d at 458; Garza v. Chavarria, 155 S.W.3d 252, 257 n.2 (Tex. App.-El Paso 2004, no pet.). 
46. Walters, 754 S.W.2d at 128. 
47. See Tex. Bus. & Com. Code Ann. § 17.50(b)(3) (Vernon Supp. 2006); Schenck v. Ebby Halliday
Real Estate, Inc., 803 S.W.2d 361, 366 (Tex. App.-Fort Worth 1990, no writ); David McDavid Pontiac, Inc.
v. Nix, 681 S.W.2d 831, 835 (Tex. App.-Dallas 1984, writ ref'd n.r.e.); Smith v. Kinslow, 598 S.W.2d 910, 915
(Tex. Civ. App.-Dallas 1980, no writ) (all holding that restoration of the consideration paid, as authorized by
section 17.50(b)(3), is a statutory recognition of the equitable remedy of recission and restitution); see also
Carrow v. Bayliner Marine Corp., 781 S.W.2d 691, 696 (Tex. App.-Austin 1989, no writ) (noting that section
17.50(b)(3) not only codifies the common law of equitable recission, but provides an independent ground of
recovery that permits the consumer to obtain restoration of money and property). 
48. Love v. State Bar of Tex., 982 S.W.2d 939, 942 (Tex. App.-Houston [1st Dist.] 1998, no pet.)
(citing Cameron v. Terrell & Garrett, Inc., 618 S.W.2d 535, 540 (Tex. 1981)).
49. Id.
50. Tex. Bus. & Com. Code Ann. § 17.47(d) (Vernon Supp. 2006). 
51. Id. 
52. See id.
53. See Bara, 876 S.W.2d at 472. 
54. See id.
55. State v. Durham, 860 S.W.2d 63, 67 (Tex. 1993); Brooks v. State, 91 S.W.3d 36, 39 (Tex.
App.-Amarillo 2002, no pet.); Shields v. State, 27 S.W.3d 267, 275 (Tex. App.-Austin 2000, no pet.); Welch
v. State ex rel. Long, 880 S.W.2d 79, 82 (Tex. App.-Tyler 1994, writ denied); Waller v. Sanchez, 618 S.W.2d
407, 409 (Tex. Civ. App.-Corpus Christi 1981, no writ). 
56. Waller, 618 S.W.2d at 409.